

**IT IS ORDERED as set forth below:**

**Date: January 6, 2022**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE: | |
| SHIRLEY LETT, | CASE NO. 10-61451-BEM |
| Debtor. | |
| | CHAPTER 7 |
| SHIRLEY WHITE-LETT, | |
| Plaintiff, | |
| v. | ADVERSARY PROCEEDING NO. 20-6031-BEM |
| BANK OF NEW YORK MELLON CORPORATION, et al., | |
| Defendants. | |

### <u>ORDER</u>

This matter came before the Court on December 16, 2021, for a hearing (the "Hearing") on Plaintiff's Motion for Protective Order ("Motion for Protective Order") [Doc. No. 136], Motion to Extend Time to Complete Discovery, Motion to Determine Validity and

Sufficiency of Plaintiff's Notice of Deposition of SPS, Motion to Compel SPS to Appear for its Deposition ("Motion to Extend") [Doc. No. 138], Motion for Sanctions for Discovery Abuses and Attorney Misconduct And Motion for Rule 54(b) Certificate of Immediate Review in the Event of Denial ("Motion for Sanctions") [Doc. No. 145], and SPS's Second Motion for Protective Order ("Second Motion for Protective Order") [Doc. 139]. Grant Schnell counsel for SPS, Shirley White-Lett, Plaintiff *pro se*, and Alan Hurst counsel for Bank of New York Mellon were present at the Hearing. After carefully considering the motions, responses, replies and arguments presented, the Court issued an oral ruling on the Motion for Sanctions at the conclusion of the Hearing and noted that a written ruling would follow.

## I.  Background of Discovery Disputes

The Motion for Sanctions is the third motion requesting sanctions that Plaintiff has filed during a litigious and protracted discovery dispute with SPS. A brief history of the ongoing discovery dispute is useful to understand the Court's conclusions herein.

### a.  The Scheduling Order

Plaintiff and the defendants in this case filed a joint report pursuant to Federal Rules of Civil Procedure ("Rule" or "Rules") 26(f) on July 9, 2020, stating that the parties agreed to exchange initial disclosures and that discovery would complete by December 18, 2020. [Doc. 29, ¶ 1, 2]. The Court approved the Rule 26(f) report on July 13, 2020. [Doc. 30]. Neither Plaintiff nor SPS provided initial disclosures pursuant to Rule 26(a)(1). Plaintiff filed a certificate of service indicating she served her first request for production of documents, interrogatories, and requests for admissions on SPS on November 17, 2020 (the "First Discovery Requests"). [Doc. 55]. SPS filed a certificate acknowledging it filed responses to Plaintiff's First Discovery Requests on December 17, 2020. [Doc. 65].

On January 13, 2021, Defendants SPS, Bank of New York Mellon Corporation, and NewRez, LLC, d/b/a Shellpoint Mortgage Servicing filed a motion to modify the case schedule ("Motion to Modify") requesting additional time to file dispositive motions, noting that "[n]ot all responses [Plaintiff] claims to have served were initially received at counsel's office, and [Plaintiff] did not initially serve counsel with copies of her discovery responses to SPS." [Doc. 74, ¶ 5]. Over the objection of Plaintiff, the Court found good cause to grant the Motion to Modify, and entered an order extending the time in which to file dispositive motions until March 12, 2021. [Doc. 96].

### b. Initial Discovery Dispute

SPS filed a motion for summary judgment on March 12, 2021 [Doc. 99] and included the declaration of Diane Weinberger ("Ms. Weinberger") and a number of exhibits in support of the motion (the "Declaration"). [Doc. 99-1]. In response, Plaintiff filed a Rule 37(c)(1) Motion for Mandatory Exclusion Rule 37(d) Motion for Sanctions; Rule 12(f) Motion to Strike and Plaintiff's Response to Motion for Summary Judgment of Select Portfolio Servicing and Reply to Select Portfolio Servicing's Response to Plaintiff's Motion for Summary Judgment (the "First Motion for Sanctions"). [Doc. 103].

In the First Motion for Sanctions, Plaintiff sought sanctions against SPS under Rule 37(c) for failure to make initial disclosures, for failure to produce documents in response to her written request, to exclude SPS's documents as inadmissible, and to strike certain of SPS's defenses to the Complaint initiating this proceeding. The Court explained in its order denying the First Motion for Sanctions that the failure to make initial disclosures could be cured by SPS, especially considering Plaintiff had failed to make her own disclosures. [Doc. 112, fn. 2]. Further, no sanctions would be awarded for the failure to produce documents because Plaintiff did not

certify that she conferred in good faith to obtain the documents; the Court did direct SPS to produce the requested documents, to the extent they existed, within 10 days. [Doc. 112]. The Court also declined to exclude the exhibits produced because they were either business records or non-hearsay, they had been authenticated by the declaration of an SPS representative, and they were relevant. The request to strike was also denied because the First Motion for Sanctions was not the proper mechanism to exclude evidence or legal arguments and the request was not timely. Finally, the order on the First Motion for Sanctions reopened discovery between Plaintiff and SPS for forty-five days, beginning ten days after entry of the order.[1] *Id*. In summary, the Court denied Plaintiff's requests, but provided the parties with guidance and the opportunity to engage in further discovery.

   **c.   Second Discovery Dispute**

Subsequently, the parties filed a number of motions that were heard together by the Court on October 4, 2021. These motions included Plaintiff's Motion to Amend, Modify and to Reconsider Order (Doc. 112) Denying Sanctions and allowing Admission of Certain Documents (the "Motion to Amend"), filed on August 17, 2021 [Doc. 115];  Plaintiff's Motion to Compel and/or Motion for Sanctions (the "Second Motion for Sanctions"), filed on September 7, 2021 [Doc. 118]; SPS's Motion for Protective Order (the "First Motion for Protective Order"), filed on September 17, 2021 [Doc. 121]; and Plaintiff's Motion for Extension of Time to Take the Deposition of Diane Weinberger (the "First Motion to Extend"), filed on September 23, 2021. [Doc. 126].

In the Motion to Amend, Plaintiff asked the Court to reconsider its order denying the First Motion for Sanctions, specifically referring to the Court's decision that loan documents submitted by SPS are relevant or to take judicial notice that the documents are disputed. Plaintiff

---

[1] The order on the First Motion for Sanctions was entered on August 4, 2021, so discovery began on August 14th and ran until September 28th. [Doc. 112].

also requested additional time to supplement her response to SPS's motion for summary judgment. Finally, Plaintiff asked that SPS be ordered to produce Ms. Weinberger, the SPS employee who provided the Declaration in support of SPS's motion for summary judgment, for a deposition at SPS's expense and without the need for serving a subpoena. *Id*. In its First Motion for Protective Order, SPS requested an order excusing it from complying with a notice of deposition for Ms. Weinberger that failed to comply with the Rules. In the First Motion to Extend, Plaintiff requested an extension of time to take Ms. Weinberger's deposition until after a ruling on the Second Motion for Sanctions.

In the Second Motion for Sanctions, Plaintiff asserts that there was a contact history identified in SPS's discovery responses that was only provided in .pdf form when she had requested it in native format with accompanying metadata and that SPS did not produce certain documents referenced in the contact history. Plaintiff does not allege that the .pdf documents do not contain metadata, rather she complains that the production does not include documents referenced in the contact history notes. Plaintiff asked the Court to either compel SPS to produce the information in the appropriate format or to exclude it. Counsel for SPS argued that the documents given to Plaintiff were given as it is viewed and printed from SPS's database. For an original production of a "native" document, Plaintiff would have to obtain the underlying SPS software to view the information she seeks.

During the hearing on October 4, 2021, Plaintiff admitted and confirmed to the Court that her claim against SPS is for violation of the discharge injunction regarding a prepetition debt related to her home mortgage, which has not been paid in full. [Doc. 130]. Because these facts are not in dispute, the Court explained that some of the documents requested were not relevant to

her claim against SPS.[2] Further, counsel for SPS stated that all requested documentation had been produced, and anything not produced was subject to attorney-client or work product privilege. The Court ruled that because the documents produced were those identified by SPS in response to Plaintiff's Interrogatory number 1 and that Plaintiff's Request to Produce number 5 was limited to the universe of documents SPS identified in response to Interrogatory 1, SPS has produced everything requested by Plaintiff. Accordingly, the Court's order on the Second Motion for Sanctions granted Plaintiff the opportunity to seek additional documents from SPS in compliance with applicable Rules while discovery remained open, but denied all other relief requested. [Doc. 130].

The Court also addressed Plaintiff's taking a deposition of Ms. Weinberger or SPS in accordance with the Rules at the October 4 hearing. [Doc. 130]. Finally, the Court noted that discovery disputes should be limited to those matters that the parties truly cannot work out, and directed Plaintiff and SPS to strive to resolve any issues they have in good faith and amicably before seeking the Court's assistance. [Doc. 130]. The Court denied SPS's requests for attorney's fees and costs but granted the remaining requests for relief. [Doc. 130]. The Court granted the First Motion to Extend, stating "parties shall have an additional sixty days, through and including November 29, 2021, to complete discovery." [Doc. 130].

### d.  Current Discovery Dispute

To recap, this adversary proceeding was filed on February 6, 2020. Discovery closed on December 18, 2020. The Court subsequently reopened discovery between SPS and

---

[2] In the order on the First Motion for Sanctions, the Court ruled that a note and deed to secure debt submitted by SPS with its motion for summary judgment were relevant to establish the nature and existence of a prepetition debt. [Doc. 112, p. 12]. Because Plaintiff admitted the prepetition debt exists the loan documents are no longer necessary to Plaintiff's claim and are thus not necessary to adjudication of this proceeding.

Plaintiff from August 14, 2021, to September 28, 2021, and then extended discovery through November 29, 2021.

On October 26, 2021, Plaintiff filed a Notice to Take Remote Deposition of Diane Weinberger. [Doc. 133]. The notice of Ms. Weinberger's deposition was made "pursuant to Federal Rule of Civil Procedure 30(b)(6)" and provides as follows:

> The deposition shall cover the testimony of deponent Diane Weinberger as given in a Declaration filed in the above-captioned adversary proceeding in which she claims competency to testify. Mrs Weinberger will be deposed as to her competency and personal knowledge of the matters stated by her under penalty of perjury in her declaration and will address her credibility and the truthfulness of her testimony in the declaration.

[Doc. 133-1 at 1]. The deposition of Ms. Weinberger was conducted on November 8, 2021, (the "Deposition"). [See Doc. 143]. On the following day, November 9, 2021, Plaintiff filed a notice to take remote deposition of SPS "pursuant to Federal Rule of Civil Procedure 30(b)(6)." [Doc. 135].

In November of 2021, Plaintiff again filed a series of motions constituting the third set of discovery disputes (the "Current Discovery Dispute"). As stated above, immediately after the Deposition, SPS noticed a deposition of Plaintiff, who subsequently noticed another deposition of SPS. Both parties seek to prevent those depositions. Additionally, Plaintiff seeks sanctions based on alleged misconduct by Ms. Weinberger and SPS's counsel at the Deposition, including false testimony and concealment of evidence. It is because of this alleged misconduct as well as failure to obtain the information Plaintiff sought through the Deposition that she seeks an additional deposition of SPS and a further extension of the discovery period.  The motions involved in the Current Discovery Dispute—Plaintiff's Motion for Protective Order, Plaintiff's Motion to

Extend, Plaintiff's Motion for Sanctions, and SPS's Second Motion for Protective Order—were heard by the Court on December 16, 2021.

II.     **Analysis**

    a.   **Motion for Sanctions**

        i.   **Alleged Misconduct**

Plaintiff filed the Motion for Sanctions on November 30, 2021. [Doc. 145]. At the Hearing, the Court denied the Motion for Sanctions and this Order memorializes and supplements the Court's ruling. Plaintiff's complaints regarding SPS are numerous and will be addressed in turn.

        1.   **Plaintiff's Allegations That SPS Is "Running out the clock and fail[ed] to produce discovery in native format with metadata"**

Plaintiff alleges that SPS is "running out the clock" and has failed to "produce discovery in native format with metadata." [Doc. 145, p. 6]. In support of this allegation Plaintiff points to an issue with receiving an empty folder from SPS's counsel in response to a production request that sought electronic information, SPS waiting until the last day to respond to additional discovery requests made by Plaintiff and then raising "nonserious objections". [Doc. 145, pp. 3-6]. Plaintiff explains that, following the October 4, 2021, hearing, the parties discussed the outstanding discovery issues by phone, and SPS agreed to produce documents in native format with metadata, so long as privileged communications were excluded. *Id.* Later that day, before Plaintiff served her formal discovery requests, SPS emailed Plaintiff a file-link, but it contained no electronic files or documents. [Doc. 145, p. 4]. Plaintiff served additional formal discovery requests on October 13, 2021, requesting that she be able to inspect and monitor SPS's data compilation retrieved from its database in native format.

On November 5, 2021, Plaintiff emailed SPS to discuss the empty file-link folder and to make arrangements "regarding the monitoring of the database search for documents otherwise related to my file." [Doc. 145, p. 4]. Plaintiff alleges that when the empty folder was modified seven hours later, the files it contained were not electronic data but rather amounted to an identical reproduction of the same paper production that the Court previously found to be nonresponsive to the discovery requests. SPS responded further to Plaintiff's November 5, 2021, email explaining that SPS would provide its discovery response by the discovery deadline. [Doc. 145, p. 6]. The Court notes that it did not find that SPS's responses were nonresponsive; rather the Court held that the documents to be produced were identified by SPS and produced and that Plaintiff could seek other or additional documents if she wished.

### 2. Plaintiff's Allegations that Counsel Made Knowingly False Statements Regarding the Location of Electronic Loan Files

Next, Plaintiff alleges that counsel for SPS represented to the Court in SPS's filings and during hearings that the only source of electronically stored information about Plaintiff's loan was SPS's database. [Doc. 145, p. 6]. Plaintiff alleges that Ms. Weinberger, in a deposition for another, unrelated litigation, testified that SPS used two database platforms, MSP (Mortgage Servicing Platform) and Serengeti. Plaintiff's contact history notes also show third party sources used by SPS to store data via reference to "portal links" for "ECM" and "IVAULT." [Doc. 145, p. 7]. Plaintiff asserts in the Motion for Sanctions that IVault is an off-site data management company, and ECM (Enterprise Content Management) is a form of content management that combines the capture, search, and networking of documents with digital archiving, document management, and workflow. *Id*. pp. 8-9.

Plaintiff questioned Ms. Weinberger about the references to ECM and IVault in the contact history and Ms. Weinberger testified that she did not know what ECM and IVault were,

and that she has no idea how to access IVault. [Doc 143, pp. 87-88][3]. Further, Plaintiff claims that the contact history notes show that a substantial portion of her loan records are maintained in IVault storage, and that SPS and its attorneys deliberately withheld potentially damaging information by concealing the IVault source. [Doc. 145, pp. 10].

### 3. Plaintiff's Allegations of False Testimony and Concealment of Evidence

Plaintiff accuses Ms. Weinberger of committing fraud and lying in the Declaration. [Doc. 145, p. 11]. In support of her contentions, Plaintiff alleges that in the Declaration, Ms. Weinberger "lied about having reviewed the loan records." [Doc. 145, p. 10; Doc. 99-1, ¶ 3]. During the Deposition, Plaintiff accused Ms. Weinberger of attempting to avoid revealing that the statement in the Declaration that she had "accessed SPS's loan file and database" was false. [Doc. 143, pp. 27-29]. Plaintiff next asserts that she was able to figure out that Ms. Weinberger did not review records or determine what information had been redacted or was incomplete from Ms. Weinberger's testimony. [Doc. 145, pp. 13-15; Doc. 143, pp. 43-46]. This conclusion is based on an exchange during the Deposition in which Plaintiff asked why redactions were made on specific documents, counsel objected and directed Ms. Weinberger not to answer to the extent the redacted information was subject to attorney-client privilege. *Id.* During the course of this exchange, Plaintiff questioned "were you intending to hide evidence?" [Doc. 143, p. 45, ln. 20-21]. What followed was a series of questions and responses by counsel in which counsel explains he made the redactions and that Ms. Weinberger's only knowledge was that they were redacted due to attorney-client privilege, such that Ms. Weinberger may not know or remember what they were. [Doc. 143, pp. 43-46]. In the Motion for Sanctions, Plaintiff asserts it is not possible that Ms. Weinberger reviewed the documents but did not know what was redacted, such that this is proof

---

[3] Citations to the Deposition testimony references the page numbers at the top of the docketed document.

Ms. Weinberger reviewed nothing but "simply dutifully signed the misleading and false declaration provided by Mr. Schnell." [Doc. 145, p. 15].

Plaintiff's next grievance is that counsel coached Ms. Weinberger to give false and evasive responses during the Deposition. [Doc. 145, p. 15]. Plaintiff asserts that counsel "coached" Ms. Weinberger to answer "I don't know" to any potentially damaging and unanticipated question. Plaintiff argues that counsel suggested Ms. Weinberger answer "I don't know," but because Plaintiff had made the deponent aware that she was in possession of prior deposition testimony, Ms. Weinberger was compelled to answer the question. To Plaintiff, this conclusively proves Ms. Weinberger was "coached" to answer "I don't know." [Doc. 145, pp. 15-18].

### 4. Plaintiff's Request for Exclusion of Evidence under Rule 37(c)

Plaintiff asks the Court to exclude the Declaration under Rule 37(c) due to SPS's continuing refusal to disclose the location of electronic information. [Doc. 145, p. 18]. Plaintiff contends the Declaration relies on records whose location were not disclosed and that Plaintiff has been forced to respond to SPS's motion for summary judgment without the benefit of important discovery. [Doc. 145, pp. 19-20]. Plaintiff also contends the Declaration should be excluded because it contains knowingly false testimony by Ms. Weinberger. [Doc. 145, p. 20]. Plaintiff argues further that counsel violated Rule 30(c)'s prohibition against speaking objections, coaching the witness, and directing the witness not to answer based on a frivolous assertion of privilege as support for excluding the Declaration. [Doc. 145, p. 21].

### ii. SPS's Response

In SPS'S response to the Motion for Sanctions (the "Response") it notes this is the third motion for sanctions propounded by Plaintiff. [Doc. 152, p. 2]. SPS recites the litany of

allegations[4] made against SPS or its counsel in the Motion for Sanctions and argues that Plaintiff has "strayed well outside the bounds of what is acceptable as argument, and instead ventures into what otherwise might be considered as defamatory and libelous." [Doc. 152, p. 2]. SPS argues the allegations are not tied to any of the exhibits, and there is no basis for sanctions, and that Plaintiff should be precluded from making allegations without foundation such that they should be stricken from the record under Rule 12(f). [Doc. 152, p. 3].

Adresse In response to Plaintiff's allegations, SPS relies on the Deposition to demonstrate it properly raised appropriate objections to questions as it is allowed to do, none of which constitutes witness coaching. SPS notes that Plaintiff did not respond to its specific objections, but just complains that they were made. [Doc. 152, p. 5]. For example, SPS notes "when SPS objected to an Exhibit shown to Ms. Weinberger that was outside the scope of the 30(b)(6) notice[,] [Plaintiff] d[id] not contest . . . that this Exhibit actually was outside the scope of her 30(b)(6) notice." [Doc. 152, p. 6]. SPS points out that it is not objectionable that Ms. Weinberger was unable to answer questions outside the scope of the notice of deposition. SPS also notes that Plaintiff read from other deposition transcripts and raised the same question multiple times during the Deposition. [Doc. 152, p. 6]. Finally, SPS argues that Plaintiff's entire series of allegations of fraud are negated by the fact that she has unredacted copies of the documents that she complains about. [Doc. 152, p. 7].

---

[4] This includes but is not limited to "'fraud upon the court,' 'violations of court orders,' deposition misconduct, violations of professional ethics, violations of counsel's duties as an officer of the court, making knowingly false representations, perjury, assisting perjury, conspiracy, concealing evidence, and obstruction of justice." [Doc. 152, p. 2].

### iii.  Analysis

**1.  Plaintiff's Allegations That SPS Is "Running out the clock and fail[ed] to produce discovery in native format with metadata"**

At the October 4, 2021, hearing, the parties and the Court discussed Plaintiff's requests for production in native format with metadata. Nevertheless, the Court found that SPS had produced everything Plaintiff had requested but that she could make additional requests.[5] This ruling was memorialized in the Court's order entered on October 8, 2021. [Doc. 130].

Plaintiff complains that when SPS sent her a folder link on the same day (October 4)[6] the folder was empty. Plaintiff did not inform counsel for SPS that the folder was empty[7] until November 5, 2021. Once she did inform SPS, counsel responded on the same day and resent a link to the folder containing documents. SPS's counsel also advised, in response to Plaintiff's inquiry, that he would provide responses to her discovery by the deadline. [Doc. 145, p. 6]. Plaintiff served her discovery requests on October 11, 2021, and on November 10, 2021, SPS served its Objections to Plaintiff's Further Requests for Documents and for Inspection of Data Compilation and to Monitor Database Search.[8] [Docs. 132, 137].

Plaintiff argues that SPS waited until the very last day of the response period to respond and lodged "non-serious" objections designed to stretch out production. Plaintiff does not identify the objections. Nor does Plaintiff acknowledge that the delays she complains of are at least

---

[5] "But I don't think based on what has been served on SPS initially, what they produced, is a basis to find that they haven't complied with my order or that they are hiding things." Transcript of October 4, 2021, hearing at doc. no. 150, p. 20, ln. 23-25, p. 21, ln. 1].

[6] SPS asserts that it originally sent this folder to Plaintiff on August 16, 2021. [Doc. 114].

[7] According to SPS's version of events, counsel for SPS originally provided Plaintiff with link to the electronic folder on August 16, 2021. After the October 4, 2021, hearing and on the same date, counsel directed Plaintiff to the prior email with the link but advised her that it had likely expired. An hour later Plaintiff requested the password, but minutes later told counsel to disregard that request. On November 5, 2021, Plaintiff told counsel the folder was empty and counsel resolved the issue later that day. That evening, Plaintiff told counsel she was able to retrieve the files. [Doc. 151 at 3-5]. This version of events is supported by emails between counsel and Plaintiff. [Doc. 145 Exs. B, C, E; Doc. 151 Exs. A, B].

[8] Rule 34(b)(2)(A) provides parties 30 days to respond to requests for production.

in part the result of her own delay. Plaintiff made no effort to depose SPS earlier in the case, and she herself made untimely responses to SPS's original discovery requests in addition to waiting a month to respond regarding the folder sent on October 4.

Plaintiff complains further that what she received in the electronic folder was merely paper copies of the documents SPS previously produced. Plaintiff complains that she has not received certain documents identified in the contact history notes. Plaintiff asserts that because of this she has not received the metadata she sought. However, because Plaintiff notes that the electronic folder was modified 7 hours later and because the information Plaintiff identifies as indicative of not receiving the electronic documents are the documents referenced in the contact history notes, the Court concludes that the metadata objection is the result of failing to request the specific documents Plaintiff wishes to review and not a lack of metadata.

At the Hearing, the Court discussed with Plaintiff the production she sought and the requests propounded. None of Plaintiff's requests encompassed the documents referenced in the contact history. The Court reminded Plaintiff of the comments made at the October 4 hearing that Plaintiff would have to ask SPS for the documents she sought. Plaintiff admitted she had not requested any specific documents and appeared to believe that having identified the underlying document at the hearing was sufficient.

Considering Plaintiff's complaints about SPS's responses to discovery, the Court notes that all that is required is that SPS abide by discovery deadlines and respond to Plaintiff's requests in a good faith and timely manner. The foregoing indicates to the Court that SPS has done

just that. Accordingly, the Court does not agree that SPS violated any Rule or code of conduct in responding to discovery[9].

2.   **Plaintiff's Allegations that Counsel for SPS Made Knowingly False Statements Regarding the Location of Electronic Loan Files**

Plaintiff argues that SPS did not disclose the many locations where her electronic loan files are kept. When questioning Ms. Weinberger about the references to ECM and IVault in the contact history, Ms. Weinberger testified that she did not know what ECM and IVault were. A review of the Deposition transcript shows that Plaintiff continued to ask Ms. Weinberger questions about this topic, sometimes repeating the same question. [Doc 143, pp. 87-90]. The Declaration includes only one page of the contact history and none of the entries, redacted or unredacted, reference either ECM or IVault. [Doc. 99-2 p. 32;  Doc. 127 p. 336; Doc. 156 p. 495]. Ms. Weinberger's statements in the Declaration do not identify ECM or IVault and Plaintiff's interrogatories and requests to admit did not ask that SPS identify all platforms and data storage programs used.

Plaintiff claims that the contact history notes show that a substantial portion of her loan records are maintained in IVault storage, however, this is not supported by Plaintiff's own evidence. The excerpt of the contact history provided by Plaintiff states "External Systems Reviewed and Screen Printed: na", which suggests no content on external systems was accessed or that the system referenced does not contain any documents relevant to the request as nothing was printed. [Doc. 145, p. 8]. The excerpt goes on to state "Portal Links Reviewed" followed by a line break and then "Imaging System (ECM and IVAULT) documents reviewed:" followed by the

---

[9] At the Hearing, Plaintiff seemed to indicate that she believes the Court should investigate SPS's document system and actions. Plaintiff misunderstands the Court's role. The Court adjudicates claims brought before it based upon the evidence presented. The Court is not an investigative body.

file names of four .pdf documents, none of which indicates that the documents or other electronic loan data are housed outside of SPS's database. Plaintiff argues that SPS's objection that the topic is outside the scope of the deposition notice cannot be used to prevent Plaintiff from attempting "to discover the content of .pdf loan file records whose content are not even yet known[.]" [Doc. 145, p. 10]. To the extent Plaintiff wishes to obtain documents referenced in the contact history, she was provided an opportunity to request those documents and discovery was extended to allow time for this. Plaintiff stated at the Hearing that she did not understand that she needed to ask for specific documents. While Plaintiff could seek a specific document such as the "bankruptcy status review" as discussed at the Hearing, or a category of documents that would encompass this entry in the contact history such as "all documents identified in the contact history" she has not propounded such a request. Furthermore, while it is apparent that additional platforms exist and apparently include a database for attorney documents, this does not mean that there are documents relevant to Plaintiff or this litigation that are housed there, nor does it mean there is different or more data on the various platforms. At this point, Plaintiff has received the documents requested.

### 3. Plaintiff's Allegations of False Declaration Testimony and Concealing Evidence

While Plaintiff accuses Ms. Weinberger of being a fraud and lying about accessing Plaintiff's loan files directly, Ms. Weinberger testified that her job was to review her Declaration and determine if the statements made in the Declaration were correct. She testified that she was provided the documents that were attached to the Declaration by the legal department; she did not access them from SPS's database. [Doc. 143, pp. 30-32]. Plaintiff's arguments in support of her contentions mischaracterize ¶ 3 of the Declaration; Plaintiff is reading ¶ 3 to say that Ms. Weinberger accessed her loan files on SPS's database to review them for her Declaration. What ¶ 3 says is: "I have access to and have accessed the computer database SPS maintains …. The

information described in this affidavit and referenced below is found in the business records of SPS. … I have access to [Plaintiff's] Loan Records with respect to the subject loan, and have knowledge of how they are maintained. Based upon my review of those records, I have gained knowledge of the facts set forth in this affidavit …." [Doc. 99-1, ¶ 3]. Simply put, Ms. Weinberger states in the Declaration that she has access to SPS's database, that she has accessed it at some time, that she has access to Plaintiff's loan records, and that she reviewed Plaintiff's loan records attached to the Declaration. The Declaration does *not* say Ms. Weinberger obtained the records she reviewed by accessing the database. Therefore, the Deposition testimony that the documents supporting the Declaration were sent to Ms. Weinberger by SPS's legal department in an email does not contradict the Declaration.

Plaintiff's assertions that Ms. Weinberger did not review or determine what information or record had been redacted or were incomplete are unsubstantiated. [Doc. 145, pp. 14-15]. The Court notes that the Declaration does nothing more than authenticate the documents attached, establish that they are business records, and establish that they reflect no telephone calls with Plaintiff in November 2013 in which she advised SPS of a bankruptcy or anything else; Ms. Weinberger does not have to know the content of redactions to do that, and her inability to answer questions about the redactions does not demonstrate false testimony or concealment of evidence by Ms. Weinberger or counsel for SPS.

As to the claims of "coaching" the witness, Plaintiff contends that objections to her questions by SPS suggested an answer to Ms. Weinberger. However, the portions of the transcript cited by Plaintiff demonstrate that Ms. Weinberger did not know the answer to the questions asked.[10] It is permissible for counsel to make an objection when he has one. Fed. R. Civ. P.

---

[10] As noted at the Hearing, there was a question regarding the notations "BKQC" on SPS's contact history provided to Plaintiff. Even after Ms. Weinberger stated she did not know what it meant, Plaintiff continued to ask questions

30(c)(2). At no point did counsel tell Ms. Weinberger what to say other than to answer honestly that she does not have knowledge when that is the case. [Doc. 143, p. 35, ln. 12]. Beyond that, there are numerous times during the Deposition when Ms. Weinberger did not have knowledge and/or the questioning was outside the scope of the deposition notice but Ms. Weinberger still attempted to answer the questions to the best of her ability. [Doc. 143, pp. 47-53]. Plaintiff ignores these situations in which Ms. Weinberger provided a response after counsel for SPS lodged an objection.

The Deposition transcript is instructive in understanding Plaintiff's penchant for mischaracterizing information. For example, Plaintiff frequently mischaracterized Ms. Weinberger's duties and responsibilities at SPS based on her job titles. [Doc. 143, p. 24]. Ms. Weinberger signed the Declaration as a "document control officer." [Doc. 99-1, p. 3]. Ms. Weinberger testified that she currently works as a director in the contested default department and has "several individuals under me who are case managers who manage contested loans. And then, occasionally, if I'm asked to, I will be – such as in a matter like this – do testimony work from time to time." [Doc. 143, p. 16, ln. 8-12]. Ms. Weinberger further testified with respect to her Declaration that "as a document control [officer], my job is to review the affidavit and determine if the statements made in the affidavit are correct. I do that by referencing loan documents that support those statements." [Doc. 143, p. 30, ln. 24-25, p. 31, ln. 1-3]. Ms. Weinberger further testified, "When I was asked to sign this affidavit, those [loan] documents were provided to me from our business records by the paralegal in the legal department that prepared and worked our counsel to prepare this affidavit. This is the role of a document control officer to which you're referring my name is associated with." [Doc. 143 p. 31, ln. 3-9]. Notwithstanding these

regarding "BKQC" and assumed it meant "bankruptcy quality control" in a line of questioning. [Doc. 143, pp. 47, 56 ln. 21].

descriptions of her duties, Plaintiff subsequently misstated Ms. Weinberger's position as a being

the head of the contested default department (i.e., "the" director instead of "a" director)[11] and asked

Ms. Weinberger questions that assumed job duties and responsibilities for a document control

officer outside of Ms. Weinberger's description of her duties resulting in frequent "I don't know

responses" by Ms. Weinberger.[12] Ms. Weinberger also answered questions that were outside the

scope of the deposition notice with "I don't know".[13]

       The Court finds Plaintiff's habit of mischaracterizing prior answers in her

questions, her propensity to assume facts not in the record, and her insistence on asking questions

far outside the scope of the deposition notice is improper and demonstrates annoyance and possibly

harassment of Ms. Weinberger. Rule 30(d)(3)(A) allows termination or limitation of a deposition

if it is "being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or

oppresses the deponent[.]" By way of example, Plaintiff asked a series of questions about how

---

[11] Plaintiff stated, "You also said you have been a director of the contested default management department….." [Doc. 143, p. 24, ln. 6-8]. Ms. Weinberger responded by explaining "No ma'am. I'm not a director over the department. I'm a director in the department. I'm not over contested default management." *Id.* at ln. 9-11. Later, Plaintiff asks "I would imagine you would have to be familiar with Ms. Goldman because you, yourself, worked as a director over that very same department according to your testimony in another case; isn't that right?" to which Ms. Weinberger again responds, "No ma'am. I have never been a director over the contested default management department. I've already stated that to you in another question to me." [Doc. 143, p. 42, ln. 9-17]. Curiously, the deposition testimony from another case that Plaintiff refers to and reads into the record, from Ms. Weinberger, states "I went on to be director in the contested default management department." [Doc. 143, p. 43, ln. 21-23]. This correction occurs multiple times throughout the Deposition, and Plaintiff continually disregards the witness' testimony. [See Doc. 143, p. 43, ln. 13-15, and pg. 53, ln. 7-23].

[12] Plaintiff asked about certain entries on the contact history that referenced IVault and seemingly assumed without any basis for doing so that IVault was within the purview of a document control officer. Plaintiff asked, "This topic fits right down your job description as a document control officer, Ms. Weinberger. … As I understand, IVAULT, is data storage and backup recovery service offered in some instances by third-party providers; is that correct?" to which Ms. Weinberger responded, "I don't know." [Doc. 143 p. 88, ln. 10-16]. Plaintiff then asked, "So as a document control officer, I would imagine you would be an expert in accessing IVAULT stored documents because that's the heart of your position. So, can you, please, walk me through each step you would take as to how you would obtain document and images that are maintained in IVAULT storage[.]" After objection by counsel, Ms. Weinberger responded, "I don't know anything about IVAULT and I have no idea how to access it." [Doc. 143 p. 89, ln. 3-15].

[13] For example, Plaintiff asked, "I'm asking you can the process be done where you can electronically move my files from that folder that's stored on SPS system to a floppy disk, or a zip drive, or a thumb drive by someone that has the authority?" and "Are you aware that SPS has not produced any audio recording of any phone calls between me and SPS employees?" [Doc. 143, p. 33, ln. 20-24, p. 35, ln. 14-16].

many employees Ms. Weinberger had supervised in a position she previously held with SPS, and what the duties of those employees were. [Doc. 143, p. 18, ln. 8-12]. Plaintiff asked about a specific employee's jobs and responsibilities and proffered a page of a LinkedIn profile in asking, "tell me if her description of her job responsibilities are reasonably accurate. And if not accurate, what did she say that was false or misleading." [Doc. 143, p. 41, ln. 7-11]. Plaintiff even asked about employee performance reviews, narrowing her questions to one specific employee who she alleges worked for SPS prior to 2013. [Doc. 143, p. 20, ln. 3-13].[14] Plaintiff also sought to ask questions about a page from a Fannie Mae servicing guide that was not produced by SPS in this case. [Doc. 143, pp. 54-58]. The Court will also point out that in the hearing on October 4, 2021, it explicitly stated that "I believe any information as to any allonge as to SPF (sic) is irrelevant." [Doc. 150, p. 7, ln. 16-18]. However, Plaintiff engages in a lengthy line of questions about the allonge over continued relevancy objections. [Doc. 143, pp. 69-86].

Some of the "questions" Plaintiff asked consisted of her reading deposition testimony from other cases into the record, which spanned multiple pages of the Deposition transcript, in which it was not clear if a question was asked. [Doc. 143, pp. 60-62]. Additionally, the Court is troubled by Plaintiff asking questions that were argumentative and accusatory and were arguably intended to harass or intimidate Ms. Weinberger. For instance, Plaintiff asks "I'm also concerned about the truth of your declaration . . . . [I]t appears to have been intentionally misleading. Are you aware that under Federal Rule of Evidence 608(b), I have the right to attack your credibility or impeach your testimony with regard to the truthfulness of your declaration?"

---

[14] "And can you tell me what were the various duties of these employees that you supervised? And if you supervised employees with different positions, ranks, or titles, then please, tell me the duties as to each position or rank." [Doc. 143, p. 18, ln. 8-12]. Plaintiff also asked, "Do you recall generally how many of the employees under your supervision were given poor job performance reviews" and "Did an employee by the name of Daryl McBride, who may or may not have been lived [sic] in Florida during his employee [sic], leave SPS sometime in 2013?" [Doc. 143, p. 18, ln. 2-4, p. 20, ln. 3-5].

[Doc. 143, p. 65, ln. 1-8]. Again, there are many lines of questions and questions themselves posed by Plaintiff that are questionable in their reasonableness and appropriateness. For instance, Plaintiff stated to Ms. Weinberger, "I have some questions as to whether you have engaged in wholesale manipulation of the loan servicing records to help your employer avoid liability . . . . Might even be reviewed as an attempted fraud on the Court" [Doc. 143, p. 66, ln. 24-25, pg. 67, ln. 1-6]. In summary, after careful review of the Deposition transcript and the record in this proceeding the Court does not agree with Plaintiff's assertion that Ms. Weinberger lied or concealed evidence during the Deposition. Rather, the Court believes Plaintiff has convinced herself of the truth of her conclusions, but that the conclusions she has reached are based on mischaracterizations of testimony and do not follow from the actual testimony and record in this proceeding.

### 4. Plaintiff's Request for Exclusion of Evidence Under Rule 37(c)

Rule 37(c)(1) provides for sanctions if a party fails to make required initial disclosures under Rule 26(a) or fails to supplement those disclosures under Rule 26(e). In the event of such a failure to disclose, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Rule also allows the Court to "impose other appropriate sanctions[.]" *Id.* 37(c)(1)(C).

The Court previously considered SPS's failure to make initial disclosures under Rule 26 and found it to be "harmless apart from the additional time necessary for the Court to address the parties' failure to make initial disclosures." [Doc. 112 at 8]. The Court has also addressed SPS's initial failure to produce documents and subsequently found that SPS has satisfied Plaintiff's initial discovery requests. [Doc. 130].

With respect to Plaintiff's claims of a continuing failure by SPS to disclose the location of electronic loan records, Plaintiff has offered no evidence of such failure. Plaintiff cannot identify what SPS has specifically refused to disclose. She also has not identified what, if any, documents or information have not yet been disclosed. It appears she is attempting to prove a negative in asserting there is some unknown information at some unknown location that has yet to be produced. Indeed, if SPS seeks to introduce evidence at trial or in a dispositive motion that had not been disclosed to Plaintiff previously, that may subject SPS's evidence to exclusion under Rule 37(c)(1), but at this point in the case this does not include the documents attached to the Declaration or others that have been produced. Further, SPS provided Plaintiff with a full unredacted copy of the contact history for her loan. [Doc. 152 at 7; Doc. 127 at 225]. Plaintiff provided an excerpt from that contact history in the Motion for Sanctions. The excerpt includes the following note: "Imaging System (ECM and iVAULT) documents reviewed: Consumer Advocacy_1000341804.pd – 10/31/2016 0016119455_note_1732831.pdf – 11/22/2013 0016119455_Hello Letter_611596482.pdf – 11/21/2013". [Doc. 145 at 8].

To the extent Plaintiff believes this shows that SPS has loan records in locations other than its database, the contact history provides the information Plaintiff needs to request those specific documents from those systems (assuming they are separate from SPS's database and systems) or any other relevant documents housed on those systems that had not already been produced. As a result, there is no continuing failure to disclose that provides a basis to exclude the Declaration. In addition, the Court notes that it is likely these documents have been produced as copies of multiple documents related to Plaintiff's loan are attached to the Declaration, including the security deed, the note, and correspondence between the parties. None of the identified documents are documents Plaintiff complains she has not received.

To the extent Plaintiff argues that the Deposition shows counsel for SPS's efforts to conceal documents by using objections to coach Ms. Weinberger, the Court has reviewed the Deposition transcript in its entirety and disagrees. As discussed above, the Court does not find that any such coaching occurred. The Court is satisfied that counsel for SPS made appropriate objections under the Rules. The Rule states that "[a]n objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). Plaintiff's statement that there is "no genuine dispute" that counsel for SPS coached the witness is merely Plaintiff's opinion and not a fact. As the Court noted at the Hearing, based on Plaintiff's continuous disregard for the scope of the Deposition as noticed, counsel for SPS would have been justified in concluding the Deposition early, but he did not.

The Court notes further that Plaintiff makes serious allegations against counsel for SPS in the Motion for Sanctions, specifically that he violated his duty of candor to the Court by attempting to mislead the Court by redacting information in documents that would show SPS was aware of Plaintiff's chapter 7 discharge as early as November of 2013 and stating that SPS's business records were only contained in one place. [Doc. 145, pp. 6, 25]. These are very serious charges that have no grounding in the documents attached to the Declaration, the Deposition testimony or the transcript of the October 4 hearing. Pursuant to Rule 26(g)(1), all Rule 26(a)(1) and (a)(3) disclosures, and all discovery requests, responses, and objections must be based on reasonable inquiry and not made for an improper purpose, such as harassment, among other things. Further, Rule 37 allows for the imposition of sanctions for failure to cooperate in discovery. The Court has reminded Plaintiff of her duties and emphasizes that Plaintiff would be wise to limit

presenting her personal opinions as facts in a manner that calls into question the professionalism of another party.[15]

### iv. Rule 54(b) Certification

While mentioned in the title of Plaintiff's Motion for Sanctions, her request for a Rule 54(b) certification for immediate review is not mentioned in the text. Rule 54(b) provides: "When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." At the Hearing, Plaintiff orally withdrew this request and the Court will not address this issue further.

### b. Motion to Extend and Motions for Protective Orders

At issue in the remaining Motions (Plaintiff's Motion to Extend, Plaintiff's Motion for Protective Order, and SPS's Second Motion for Protective Oder), is whether Plaintiff can take a second Rule 30(b)(6) deposition of SPS, whether SPS can take Plaintiff's deposition, and whether the Court should extend the discovery period to allow for this. [Docs. 136, 138, 139].

### i. Arguments

Plaintiff makes the same or similar allegations in the Motion to Extend and the Motion for Protective Order as she did in the Motion for Sanctions, including that counsel for SPS failed to disclose all the locations in which Plaintiff's loan records were stored electronically. New allegations include that SPS is making a "legally unauthorized attempt to take her deposition" and that the Court extended discovery for the "limited purpose of allowing Plaintiff to obtain"

---

[15] The Court reminds Plaintiff that Fed. R. Bankr. P. 9011(a)-(c) applies to her allegations and also allows for the imposition of sanctions for misrepresentations to the Court. See also, *In re Jones,* 632 B.R. 138 (Bankr. S.D. Ohio 2021) (court *sua sponte* sanctioned *pro se* litigants for abuse of process under Bankruptcy Rule 9011 and 11 U.S.C. § 105(a)).

discovery but not for SPS to take additional discovery. [Doc. 136 at 1-2]. Plaintiff objects to the deposition as late filed, "for the sole purpose of harassment." Plaintiff also argues that SPS filed a motion for summary judgment prior to taking her deposition, and a deposition request a year into discovery in this case should be denied. *Id*. at 12. The summary request in Plaintiff's Motion to Extend is to allow her to depose another SPS witness because the witness she chose "Was Ignorant of Every Meaningful Subject." (emphasis in the original). [Doc. 138, p. 25].

In response to these new allegations, SPS argues that Plaintiff has now brought another discovery dispute before the Court, based on "accusatory remarks [that] are not rooted in fact and actually stem from her own confusion …." [Doc. 151, p. 2]. SPS accuses Plaintiff of dragging out the discovery process to "incredible lengths." *Id*. SPS asserts it has provided all documentation requested and has worked with Plaintiff to resolve any perceived issues, and as such, she is not entitled to an extension of discovery. SPS provides examples of email communications between its counsel and Plaintiff in support of its assertion that it has worked diligently to resolve discovery issues but Plaintiff has let time lapse in between communications to her detriment. *Id*. at 4.

Further, in its Second Motion for Protective Order, SPS alleges that Plaintiff again unilaterally scheduled a deposition of SPS.[16] SPS argues that Plaintiff already took a Rule 30(b)(6) deposition and is not entitled to another one, especially considering SPS advised Plaintiff that Ms. Weinberger would not be the appropriate witness if SPS was providing a Rule 30(b)(6) witness and sought to assist her in properly noticing the Rule 30(b)(6) deposition of SPS. [Doc. 139, Ex. C]. SPS states that it should not be subject to multiple depositions in contravention of Rule

---

[16] This issue first came before the Court in SPS's First Motion for Protective Order, which explained that in her first Notice of Deposition, Plaintiff unilaterally set an in-person deposition of Ms. Weinberger in counsel's Atlanta office, without notifying SPS if the deposition constituted a Rule 30(b)(6) deposition or an attempt to resolve issues relating to short-notice cross-country travel of a witness during a pandemic.

30(a)(2)(A)(ii), which requires leave of this Court to take a deposition if the deponent has already

been deposed in the case. SPS again raises scope objections from the Deposition and SPS believes

"Plaintiff now wants additional information that she probably should have included as areas of

inquiry the first time. Plaintiff failed to do so and now expects SPS to once again burden itself with

Plaintiff's continued harassment of SPS's counsel and employees." [Doc. 139, p. 5]. Likewise,

SPS characterizes the Motion for Extension as "another bite at the apple," as Plaintiff's second

notice of deposition contains "many new, additional topics of purported inquiry" that she should

have noticed in the prior deposition. [Doc. 151, p. 7]. SPS explains it has tried to work with

Plaintiff throughout the discovery process, which has been extended twice, to no avail.

SPS also explains that while Plaintiff labors over the redaction of a contact history

provided to Plaintiff, she "has a complete and entirely unredacted copy of the contact history.

Arguments about improperly concealing evidence are clearly misguided and inaccurate."[17] *Id.* As

such, SPS denies there is any reason to extend discovery, and attests that "[n]either SPS nor counsel

has ever hidden any information from Plaintiff, yet they continue to be relentlessly attacked and

forced to defend from false claims of impropriety." [Doc. 151, pp. 7-8].

### ii.  Analysis

First, with respect to Plaintiff's Motion for Protective Over, in which she seeks to

prevent SPS from taking her deposition, the Court rejects Plaintiff's argument that the discovery

period was extended solely to allow Plaintiff to obtain discovery. The Court previously stated that

"[b]ased on the potential resolution of the issues raised during the [October 4, 2021] hearing, the

---

[17] Plaintiff's filings show that she has had an unredacted copy of the contact history since at least September 23, 2021, when she attached it as Exhibit S to the Amended Declaration of Shirley White-Lett. [Doc. 127 at 224]. The contact history runs from November 21, 2013 to March 4, 2020. *Id.* Paragraph 24 of the Amended Declaration states that Plaintiff "had the opportunity to refresh [her] memory upon review of the 'Contact History' produced in discovery in this case …." [Doc. 127 at 9].

Court extended the discovery period to give Plaintiff time to complete her investigation and supplement her prior response to SPS's Motion for Summary Judgment[.]" [Doc. 130 at 4]. The Court then "ORDERED that Plaintiff's Motion for Extension of Time is GRANTED, and the parties shall have an additional sixty days, through and including November 29, 2021, to complete discovery." *Id.* (emphasis added). Nothing in this language limits discovery, although it does explain the Court's reasoning for reopening discovery. Nevertheless, the Court agrees that SPS had plenty of time to request a deposition of Plaintiff prior to the original discovery deadline and the Court will grant Plaintiff's Motion for Protective Order.

Next, with respect to SPS's Second Motion for Protective Order, the Court agrees with SPS that Plaintiff is subject to the applicable discovery rules, that Rule 30(a)(2)(A)(ii) requires leave of the Court to take a second deposition if the deponent has already been deposed in the case, and that Plaintiff has failed to seek such leave.[18] Therefore, as a matter of procedure, Plaintiff is not entitled to take a second deposition of SPS, and the Second Motion for Protective Order will be granted. Furthermore, even if Plaintiff had sought leave, it would not be given based upon her conduct during the Deposition, as more fully described above.

Plaintiff states that "although she specifically named Weinberger as the deponent, SPS was not compelled to offer Weinberger as the designated deponent but could designate another representative." [Doc. 138, fn. 5]. This is incorrect; Plaintiff *specifically* noticed a deposition of Ms. Weinberger. To comply with the Rules SPS was compelled to produce Ms. Weinberger. In fact, Plaintiff acknowledges that her Notice of Deposition provided that "Mrs Weinberger will be deposed as to her competency and personal knowledge of the matters stated

---

[18] While Plaintiff's Motion to Extend is titled "Plaintiff's Motion for: Extension of Time to Complete Discovery and Motion to Determine Validity and Sufficiency of Plaintiff's Notice of Deposition of SPS and Moton to Compel SPS to Appear for Its Deposition," the pleading does not contain any argument or mention of her request to determine the validity and sufficiency of Plaintiff's Notice of Deposition [Doc. 138].

by her under penalty of perjury in her declaration and will address her credibility and the truthfulness of her testimony in the declaration." [Doc. 138, fn. 6]. Given the subject matter identified in the notice of deposition, which was determined by Plaintiff, it is absurd for Plaintiff to argue that SPS could have designated anyone other than Ms. Weinberger as its representative. Plaintiff was forewarned by SPS of the likelihood that Ms. Weinberger would not be able to provide the information she was seeking. Plaintiff disregarded this information and cannot now complain about the discovery she sought and require that SPS be subject to an additional deposition. Plaintiff's tendency to venture outside the scope of the deposition notice and her behavior when these questions are not answered to her liking is instructive in determining whether a second deposition is appropriate.

Finally, with respect to Plaintiff's Motion to Extend, the Court does not find any circumstances warranting further extension of time to complete discovery. Plaintiff contends that counsel for SPS concealed the existence of computer systems on which her loan documents might be stored. As explained fully above, the Court finds no merit in these contentions. Furthermore, the Court previously provided guidance to Plaintiff on propounding additional discovery and provided additional time for her to do that. While Plaintiff claims she did not understand the Court's document request instructions made at the October 4, 2021, hearing, the Court believes it was clear and that it was incumbent upon Plaintiff to review the Rules and proceed accordingly. Plaintiff has failed to take advantage of this opportunity and the Court will not exercise its discretion to extend discovery or allow a further deposition. As the Court will not be allowing for further depositions or allowing Plaintiff to seek additional document production, the request to extend discovery will be denied.[19]

---

[19] Plaintiff asked for additional discovery on October 12, 2021. [See Doc. 145, Ex. A]. Specifically, she requested "in-person monitoring of Defendant's use of search terms during its search of its database for records continued in

### III.     Conclusion

Having previously denied the requests in the Motion for Sanctions, presently before the Court are the following requests: (1) to extend discovery past the November 29, 2021, deadline to engage in further document production and Rule 30(b)6) deposition; (2) to prevent a deposition of Plaintiff by SPS; and (3) to prevent an additional deposition of SPS by Plaintiff. The Court finds that the request to extend the discovery period should be denied, and that each protective order should be granted such that no further depositions will occur.

Plaintiff has been given every opportunity, and the Court has provided guidance on how to engage in discovery. This current discovery dispute constitutes the second time Plaintiff has brought an issue before the Court during the discovery process that is of her own making. Therefore, there is no need to engage in further document production and as a result no need to extend discovery to do so. Plaintiff is not entitled to a further deposition of SPS; she must now rely on the deposition testimony she asked for and obtained.

As discussed in detail, Plaintiff has resorted to name-calling and asserting baseless accusatory opinions about SPS's employee and counsel. Plaintiff failed to comply with the Rules in the Deposition because many if not the majority of questions asked were outside of the scope of the deposition notice she propounded, were outside the scope of this litigation, and were frequently made in an aggressive and insulting manner. Plaintiff is *pro se*; however, that does not excuse her failure to comply with the Rules and does not excuse behavior that falls short of professional. SPS seeks to depose Plaintiff at this late date; there is no reason why Plaintiff could not have been deposed prior to the expiration of the last extension of the discovery deadline. The

---

Plaintiff's loan file and will verify search results." [Doc. 145, pp. 1-2]. This is duplicative of her prior requests for information in native format, and as discussed above, the Court has denied that request.

Court will not extend discovery for SPS on this basis either. Thus, there is no basis on which to extend discovery. Therefore, it is hereby

        ORDERED that Plaintiff's Motion to Extend is DENIED. It is further

        ORDERED that Plaintiff's Motion for Sanctions is DENIED. It is further

        ORDERED that Plaintiff's Motion for Protective Order is GRANTED to the extent it seeks to prohibit SPS from taking Plaintiff's deposition. It is further

        ORDERED the SPS's Second Motion for Protective Order is GRANTED.

**END OF ORDER**

**<u>Distribution List</u>**

Grant Edward Lavelle Schnell
Regions Plaza, Suite 1800
1180 West Peachtree Street
Atlanta, Georgia  30309

Shirley D. White-Lett
456 North Saint Mary's Lane, NW
Marietta, Georgia 30064