**IT IS ORDERED as set forth below:**

**Date: January 24, 2022**

_____

**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: <br><br> SHIRLEY LETT, <br><br>    Debtor. | CASE NO. 10-61451-BEM <br><br> CHAPTER 7 |
| SHIRLEY WHITE-LETT, <br><br>    Plaintiff, <br><br> v. <br><br> BANK OF NEW YORK MELLON CORPORATION, et al., <br><br>    Defendants. | ADVERSARY PROCEEDING NO. 20-6031-BEM |

# O R D E R

This matter is before the Court on motions for summary judgment filed by Plaintiff Shirley White-Lett ("Plaintiff") [Doc. 72], and Defendant Select Portfolio Servicing, Inc. ("SPS") [Doc. 99]. Each motion has been fully briefed by the parties and is ripe for determination.

Plaintiff initiated this proceeding by filing a complaint on February 6, 2020. [Doc. 1]. In the complaint (the "Complaint"), Plaintiff seeks a determination that her personal liability on her mortgage debt was discharged and requests sanctions for SPS's violation of the discharge injunction under 11 U.S.C. § 524. The Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(O).

**I. Summary Judgment Standard**

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56 requires the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant is required to file a separate statement of facts, numbered separately, as to which it contends there are no genuine issues to be tried. BLR 7056-1(a)(1). Facts set forth in the statement of facts must be supported by "citing to particular parts of materials in the record, including … affidavits …." Rule 56(c)(1). Affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Rule 56(c)(4).

The respondent is required to file a statement of facts, numbered separately, "to which the respondent contends a genuine issue exists to be tried." BLR 7056-1(a)(2). The respondent "may not rest upon the mere allegations or denials in its pleadings" but "must set forth specific facts showing that there is a genuine issue for trial. A mere 'scintilla' of evidence supporting the opposing party's position will not suffice[.]" *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106. S. Ct. 2505, 2512 (1986)). Any material facts not specifically controverted by the respondent are deemed admitted. BLR 7056-1(a)(2).

2

The Court will only grant summary judgment when the evidence, viewed in the light most favorable to the nonmoving party, shows no genuine dispute of material fact. *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). A fact is material if it "might affect the outcome of the suit under the governing law …." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage the Court "'must not resolve factual disputes by weighing conflicting evidence[.]'" *Tippens*, 805 F.2d at 953 (*quoting Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986)). Further, "the court may consider any admissible facts and disregard any inadmissible statements occurring in the same affidavit." *Devan v. Zamoiski Southeast, Inc. (In re Merry Go Round Enter., Inc.)*, 272 B.R. 140, 145 (Bankr. D. Md. 2000); *see also Peterson v. Board of Trustees of the Univ. of Ala.*, 644 F. App'x 951, 954 (11th Cir. 2016).

The standard for granting summary judgment is not affected by the filing of cross-motions for summary judgment. "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc., § 2720 at 335-36 (4th ed. Apr. 2019 update).

**II. Material Facts Not in Dispute**

Plaintiff filed a *Statement of Material Facts Not Genuinely Disputed* (the "SMF") with her motion for summary judgment as required by BLR 7056(a)(1). [Doc. 73]. SPS responded by filing its *Select Portfolio Servicing, Inc.'s Response To Plaintiff's Statement of Undisputed Facts And Statement of Facts Genuinely In Dispute* in response to the SMF (the "RSMF"). [Doc. 100]. However, SPS did not file "a separate and concise statement of the material facts, numbered

3

separately, as to which the movant contends no genuine issue exits to be tried" with its motion for summary judgment. BLR 7056-1(a)(1). Instead, SPS combined its motion for summary judgment in its response to Plaintiff's motion for summary judgment in *Defendant Select Portfolio Servicing, Inc.'s Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment*. [Doc. 99]. This filing includes a section titled "Undisputed Facts," and SPS attached the declaration of Diane Weinberger in support of its motion for summary judgment. However, "[a]ffidavits and the introductory portions of briefs do not constitute a statement of material facts." BLR 7056-1(a)(1). Although the SMF and RSMF provide the factual framework for evaluating Plaintiff's motion for summary judgment, nothing in the Local Rules allows the Court to apply those papers to the separate motion for summary judgment filed by SPS, and SPS has not asked the Court to do so. Without a statement of material facts from SPS, Plaintiff cannot determine whether to dispute any asserted facts,[1] and the Court cannot determine whether SPS is entitled to judgment as a matter of law. As a result, SPS's Motion for Summary Judgment will be denied.[2]

The SMF contains numerous opinions, conclusions, and characterizations, none of which are facts and, thus, will not be considered as facts. The facts that are undisputed as set forth in the SMF (relevant to SPS) and RSMF are as follows:

**A. The Home Loan and Initial Servicing**

On May 5, 2005, Plaintiff executed an adjustable rate note to Aegis Wholesale Corporation in the amount of $636,000 to refinance her home at 456 North Saint Mary's Lane, in Cobb County, Georgia. [Docs. 73 ¶ 1, 100 ¶ 1]. On January 19, 2010, Plaintiff filed Chapter 7 case

---

[1] Plaintiff filed a *Supplemental Statement of Facts in Opposition to Motion for Summary Judgment of Select Portfolio Servicing, Incorporation* [Doc. 158], which the Court need not consider because of SPS's failure to set forth a separate statement of undisputed facts.

[2] Even if this were not the case, based upon the facts that are undisputed, the Court would deny SPS's motion for summary judgment on the merits because there are material facts that remain regarding SPS's knowledge of Plaintiff's discharge.

4

no. 10-61451 (the "Main Case"). [Docs. 73 ¶ 2, 100 ¶ 2]. As part of the filing, she listed BAC Home Loans ("BAC") on Schedule D as a "secured creditor" as she then supposed the meaning of the term to be. [Id.]. Plaintiff also filed a Statement of Intention seeking to have her mortgage loan reaffirmed. [Docs. 73 ¶ 3, 100 ¶ 3]. At the time Plaintiff filed the Main Case, she was not in default on her mortgage payments. [Id.].

On October 27, 2010, BAC, on behalf of the Bank of New York Mellon (the "Bank") and as its servicer, filed a motion for relief from the automatic stay in Plaintiff's bankruptcy case. [Docs. 73 ¶ 10, Main Case Doc. 14]. The Bank is a bank incorporated under the laws of New York. [Doc. 77-1 ¶ 2]. The Bank is not a Defendant in this proceeding. BAC subsequently withdrew the motion for stay relief on January 21, 2011. [Doc. 73 ¶ 10, Main Case Doc. 22]. On February 25, 2011, the Bankruptcy Court entered an order granting Plaintiff a discharge, which was served to BAC on February 28, 2011.[3] [Docs. 73 ¶ 11; 100 ¶ 11; Main Case Docs. 23, 24].

**B. Servicing by SPS**

In November 2013, Plaintiff received notice from SPS that SPS would be the new servicer of her mortgage loan and informing her of the opportunity to apply for a loan modification. [Docs. 73 ¶ 24, 100 ¶ 24]. Plaintiff applied for a loan modification. [Docs. 73 ¶ 26; 100 ¶ 26]. SPS sent monthly statements to Plaintiff from December 2013 through September 2016. [Docs. 73 ¶¶ 13, 27; 100 ¶¶ 13, 27; 111 Ex. 1]. The monthly statements dated December 4, 2013 and January 8, 2014 included a payment due date, amount of past due payments, a payment coupon specifying the amount due, and notice that "this statement is an attempt to collect a debt." [Doc. 111 Ex. 1]. The monthly statements dated February 10, 2014 through September 14, 2016 included a payment

---

[3] While Plaintiff's Statement of Undisputed Facts states February 28, 2011, the docket in the Main Case reflects a date of February 27, 2011. This discrepancy is not material to the issues before the Court.

5

due date, amount of past due payments, total amount due, a payment coupon that specified the amount due and the due date, and a notice that "[t]his is an attempt to collect a debt." [Id.].

Upon receiving the mortgage statements Plaintiff experienced despair, anger, anxiety, and other emotional distress. [Docs. 73 ¶ 28-29; 100 ¶ 28-29]. By early 2015, Plaintiff noticed a worsening of headaches and ability to breathe and experienced for the first time chest pains and dizziness. [Docs. 73 ¶ 30; 100 ¶ 30]. Plaintiff sought medical attention in or around March 2015, at which time she was diagnosed with a thoracic-aortic aneurysm. [Docs. 73 ¶ 32; 100 ¶ 32]. Through 2011, Plaintiff had been routinely working an average of 40 hours per week and had no medical issues affecting her life or ability to work. [Doc. 73 ¶ 31]. As a result of that diagnosis and per instructions from her treating physician and the medication he prescribed, Plaintiff felt physically unable to work and did not attempt to work in 2015. [Doc. 73 ¶ 32].

The loan modification process with SPS continued throughout most of 2016. [Docs. 73 ¶ 36; 100 ¶ 36]. During 2016, Plaintiff's medical condition stabilized and she was able to work more hours. [Docs. 73 ¶ 38, 40; 100 ¶ 38, 40]. SPS transferred servicing to NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") in December 2016. [Docs. 73 ¶ 37; 100 ¶ 37].

**III. Legal Analysis**

    **A. Applicable Law**

A Chapter 7 discharge "discharges the debtor from all debts that arose before the date of the order for relief[.]" 11 U.S.C. § 727(b). The discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor[.]" 11 U.S.C. § 524(a)(2). This section makes clear that personal liability is discharged when an individual receives a Chapter 7 discharge. But, it is equally clear that a Chapter 7 discharge does not avoid

6

or otherwise affect a lien against property of the debtor. *Sellers v. Rushmore Loan Mgmt Servs.*, LLC, 941 F.3d 1031, 1035 (11th Cir. 2019); *Mele v. Bank of America Home Loans (In re Mele)*, 486 B.R. 546, 555 (Bankr. N.D. Ga. 2013) (Ellis-Monro, J.) (citing *Long v. Bullard*, 117 U.S. 617, 620-21, 6 S. Ct. 917, 918 (1886)).

The test for violation of the discharge injunction is "'whether the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt.'" *Roth v. Nationstar Mortg., LLC (In re Roth)*, 935 F.3d 1270, 1276 (11th Cir. 2019) (quoting *GreenPoint Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313, 1322, 11th Cir. 2015)). A creditor who violates the discharge injunction may be held in civil contempt under 11 U.S.C. § 105(a)[4] "if there is no fair ground of doubt as to whether the [discharge] order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799, 1801 (2019); *Roth*, 935 F.3d at 1275; *compare McLean*, 794 F.3d at 1323 (requiring that the creditor "was aware of the discharge injunction and intended the action that violated it" in order to impose sanctions). The debtor has the burden of establishing a violation of the discharge injunction by clear and convincing evidence. *Daniels v. Howe Law Firm, P.C. (In re Daniels)*, 591 B.R. 814, 822 (Bankr. N.D. Ga. 2018) (Ritchey Craig, J.) (citations omitted).

### B. Discharge of Plaintiff's Personal Liability for the Mortgage Debt

It is undisputed that the debt at issue originated from a prepetition note and that Plaintiff received a discharge on February 25, 2011. [Docs. 72 at 3; 78-1 at 2; 87-1 at 2; 100 ¶ 1, 2, 11]. Furthermore, neither party asserts that the debt was reaffirmed, and there is no evidence of reaffirmation on the docket in the Main Case. Therefore, Plaintiff's personal liability for the debt

---

[4] "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

is subject to the discharge injunction. The question, then, is whether the undisputed facts show as a matter of law that SPS's conduct violated the discharge injunction and, if so, whether SPS should be sanctioned for contempt.

### C. Whether SPS Violated the Discharge Injunction

#### 1. Overview

Plaintiff filed her bankruptcy case on January 19, 2010 and received a discharge on February 25, 2011. SPS began servicing Plaintiff's mortgage in November 2013. Plaintiff contends that SPS violated the discharge injunction by sending her a Validation of Debt Notice [Doc. 1 at 32 (Ex. A)], 33 monthly mortgage statements [Doc. 111 at 7 (Ex. 1)], and a Notice of Default [Doc. 1 at 123 (Ex. D)]. Plaintiff contends that SPS added unexplained fees and charges, including legal fees of more than $70,000 [see Doc. 73 at 171 (Ex. N)], to her loan balance without explaining how the fees were incurred and that SPS intimated in its monthly statements that Plaintiff would be held personally responsible for the fees. Plaintiff contends she was damaged by the alleged violation of the discharge injunction because the stress and anxiety caused by the violation resulted in her developing a medical condition in early 2015, caused her emotional distress, and caused loss of income. SPS contends it had no knowledge of Plaintiff's bankruptcy discharge. But even if it did, its communications with Plaintiff were informational and did not violate the discharge injunction.

SPS contends that no telephone calls with Plaintiff occurred during the time period she asserts and therefore it had no knowledge of her bankruptcy based on such telephone calls. SPS further contends that even if Plaintiff can show it had knowledge of the bankruptcy, its correspondence with Plaintiff did not violate the discharge injunction because it was informational in nature and otherwise required by federal law or the terms of Plaintiff's mortgage. Finally, SPS

8

argues there is a fair ground of doubt about whether it violated the discharge injunction because even Plaintiff was unsure whether she had reaffirmed the mortgage debt.

**2. Whether SPS's Mortgage Statements Violated the Discharge Injunction**

First the Court will consider whether Plaintiff has established that SPS violated the discharge injunction through its written communications, beginning with the mortgage statements. The mortgage statements sent by SPS do not include any express acknowledgment of Debtor's bankruptcy, any bankruptcy disclaimers,[5] or any indication that payment is voluntary. The statements include a due date, amount due, and amount of late fee charged for a late payment. The payment coupon includes the same information. In a section titled "Important Messages," the statements say, "This is an attempt to collect a debt" or "You are hereby notified that this statement is an attempt to collect a debt." Statements dated from February 10, 2014 to September 14, 2016[6] include a "Delinquency Notice" that states, "Failure to bring your loan current may result in fees and foreclosure – the loss of your home." The "Delinquency Notice" also gives the total amount due and says, "You must pay this amount to bring your loan current."

SPS cites *Golden v. Carrington Mortgage Services LLC (In re Golden)*, 568 B.R. 838 (Bankr. M.D. Ala. 2017), for the proposition that acts reasonably taken to service or foreclose a mortgage are not construed as violations of the discharge injunction. In *Golden* the bankruptcy court granted the mortgage servicer's motion to dismiss a complaint that alleged that mailing mortgage statements, delinquency notices, notices of lender placed hazard coverage, and a notice of intent to foreclose violated the discharge injunction. *Id.* at 839, 843. The debtors in that case

---

[5] The only reference to bankruptcy that the Court could find was under the heading "Payment Instructions" on the back of the statements, which said in relevant part: "(NOTE: If you are currently sending all or part of your payment to the bankruptcy trustee, please disregard the Select Portfolio Servicing, Inc. payment address for that portion you are sending to the trustee.)"

[6] The format of the monthly statements changed slightly after the January 8, 2014 statement, but there was no material change to the content of the statements.

9

had moved out of the property prior to filing for bankruptcy and alleged in the complaint that the creditor had "absolutely no legitimate reason to correspond" with them regarding the property. *Id.* at 842. The court stated that because the lender had a right to foreclose, it did have a legitimate reason to contact the debtors. *Id.* In making its decision, the court relied on "considerable case law supporting the proposition that acts reasonably taken to service a mortgage or to foreclose a mortgage do not violate the discharge injunction[.]" *Id.* at 841.

The court in *Golden* did not describe the content of the mortgage statements and whether they included demands for payment, disclaimers, or other information that could be used to distinguish between informational notices and attempts to coerce payment. However, the cases cited by *Golden* can be distinguished from the facts in this case. In *Thomas v. Seterus, Inc., (In re Thomas)*, 554 B.R. 512 (Bankr. M.D. Ala. 2016) and *Morris v. Wells Fargo, N.A. (In re Morris)*, 514 B.R. 658 (Bankr. N.D. Ala. 2014), the issue was whether sending mortgage statements violated the automatic stay rather than the discharge injunction. In *Thomas*, the mortgage statements included prominent bankruptcy disclaimers and did not make any direct demands for payment. 554 B.R. at 515-16. *Morris* involved communications about a loan modification, foreclosure, and foreclosure prevention, not mortgage statements. 514 B.R. at 669. In *Henriques v. Green Tree Servicing, LLC (In re Henriquez)*, 536 B.R. 341, 350 (Bankr. N.D. Ga. 2015) (Sacca, J.), the creditor did not send post-discharge mortgage statements to the debtor, but rather sent letters and notices that were informational in nature, did not request payment, did not reference an amount due, and in some cases included prominent bankruptcy disclaimers. In *Mele*, this Court found that account statements did not violate the discharge injunction when they included a prominent statement that they were "for information purposes" and a disclaimer that the statement should not be construed as an attempt to collect against the debtor personally, but that the servicer

10

could enforce its rights against the collateral in the event of a default. 486 B.R. at 557. In *Giles v. James B. Nutter & Company (In re Giles)*, 502 B.R. 892 (Bankr. N.D. Ga. 2013) (Massey, J.), the creditor sent the debtor post-discharge mortgage statements, and she continued to make payments because she wanted to keep her house. *Id.* at 895. She did not allege that the statements violated the discharge injunction, but rather that the creditor engaged in improper conduct when she subsequently defaulted, including phone calls about delinquent payments, letters about missed payments, reporting balances to credit agencies, and inspections of the house. *Id.* at 900-01. The court found no violation of the discharge injunction. *Id.* at 903-06.

In *Roth*, the Eleventh Circuit applied the *Taggart* standard in affirming the bankruptcy court's determination that monthly mortgage statements did not violate the discharge injunction, explaining:

> If we accepted [the debtor's] argument that the Informational Statement is unlawful debt collection under § 524, there would be little daylight between (1) a legitimate attempt by [the creditor] to inform [the debtor] how she could regain the property and (2) an unlawful attempt at debt collection in violation of the § 524 injunction. Instead, the statutory scheme clearly allows for [the creditor] to send potentially helpful informational statements to [the debtor] without simultaneously casting those statements as debt collection.

935 F.3d at 1276. However, the mortgage statements in *Roth* included a bold bankruptcy disclaimer on the first page of the statement indicating they were not intended to collect a debt, and the payment coupon was marked as "voluntary." 935 F.3d at 1273, 1276. In that way, it is similar to the cases cited in *Golden*. *See also McConnie Navarro v. Banco Pupular De Puerto Rico (In re McConnie Navarro)*, 563 B.R. 127, 145 (Bankr. D.P.R. 2017) (monthly statements did not violate discharge injunction when they included prominent language that they were for

11

informational purposes only and not an attempt to collect a debt and the payment coupon stated it was not an attempt to collect a debt).[7]

Conversely, when post-discharge mortgage statements are devoid of prominent bankruptcy disclaimer language, they have been held to violate the discharge injunction. *Todt v. Ocwen Loan Serv., LLC (In re Todt)*, 567 B.R. 667, 678-79 (Bankr. D.N.H. 2017) (the discharge injunction was violated when the only recognition of bankruptcy was a disclaimer on the back of the monthly statement); *In re Cantrell*, 605 B.R. 841, 856-57 (Bankr. W.D. Mich. 2019) (first post-discharge mortgage statement sent by servicer violated discharge injunction because it was indistinguishable from prepetition mortgage statements and did not acknowledge the debtor's bankruptcy; subsequent mortgage statements did not violate the discharge injunction because they included appropriate and conspicuous disclaimers).

> As explained by the court in *Cantrell*:
>
> the distinction between communications that improperly seek to impose personal liability on a debtor and those that merely seek periodic payments in lieu of foreclosure is dependent, to a great extent, on the content of the correspondence. … Although not entirely dispositive, inclusion of clear and prominent disclaimers informing discharged debtors that the creditor is solely seeking payment as a substitute for pursuing [its] in rem rights' is an effective way for the creditor to identify the purposes of the communications and to ensure that violation of the discharge injunction does not occur. Accordingly, the presence, prominence, and clarity of disclaimer language in post-discharge communications with debtors is often a significant factor in a court's determination of whether the communications violate the discharge injunction.

605 B.R. at 856 (internal citations, footnote, and quotation marks omitted).

---

[7] Coincidentally, the statements in *McConnie Navarro* were sent by SPS from November 18, 2014 to September 18, 2015. 563 B.R. at 139.

12

The statements sent to Plaintiff by SPS do not include any disclaimer language or any acknowledgement of her discharge. SPS argues that monthly statements are required by the Truth In Lending Act ("TILA") and 12 C.F.R. § 1026.41 (Regulation Z). But nothing in TILA or its regulations prevents SPS from including disclaimer language in the statements.[8] Based on the foregoing, the Court finds that the mortgage statements SPS sent to Plaintiff had the type of coercive effect that violates the discharge injunction.

### 3. Whether SPS's Other Correspondence Violated the Discharge Injunction

SPS also sent Plaintiff a letter titled "Validation of Debt Notice," dated December 2, 2013. [Doc. 1 Ex. A]. In contrast to the mortgage statements, the Validation of Debt Notice is informational in nature. It (1) explains SPS's duties as serving agent for Plaintiff's mortgage loan, (2) provides a breakdown of the debt, showing the total due and amounts for unpaid principal balance, interest, corporate advances, late charges, and escrow advance, and an explanation that interest and other charges may change the amount due, and (3) advises Plaintiff of her rights to dispute the validity of the debt. The letter says, "As the servicer for your mortgage loan, SPS is collecting the debt on behalf" of the owner of the loan. The last line of the letter says, "This communication from a debt collector is an attempt to collect a debt[.]" Notwithstanding these two statements, the letter does not include a due date or a demand for payment. It does include the amount of the debt. However, this, along with the other information in the letter, is consistent with the requirements of the Fair Debt Collection Practices Act. 15 U.S.C. § 1692g(a); *Mele*, 486 B.R.

---

[8] In 2018, subsection (f) was added to 12 C.F.R. § 1026.41, which changed the requirements for periodic statements for residential mortgage loans when the debtor is in bankruptcy or when the debtor's personal liability has been discharged in bankruptcy. Among other things, subsection (f) requires the periodic statement to include: "(i) A statement identifying the consumer's status as a debtor in bankruptcy or the discharged status of the mortgage loan; and (ii) A statement that the periodic statement is for informational purposes only." 12 C.F.R. § 1026.41(f)(2)(i), (ii).

13

at 557. Accordingly, the Court finds SPS did not violate the discharge injunction by sending the Validation of Debt Notice.

SPS also sent Plaintiff a letter titled "Notice of Default" dated March 8, 2016. [Doc. 1 Ex. D]. The letter notifies Plaintiff that her loan is in default, the steps she can take to cure the default, the amount needed to cure the default, and that the consequences of failure to cure the default could be foreclosure and the loss of her home. At the top of the letter is a statement in all caps, bolded, and underlined that says: "PLEASE READ THIS NOTICE CAREFULLY, TAKE ACTION TO AVOID THE LOSS OF YOUR PROPERTY." Although the letter also says, "This letter is a formal demand for payment[,]" that statement is clearly made in the context of preventing foreclosure. Indeed, the entire tenor of the letter is to provide Plaintiff with information about avoiding foreclosure. Therefore, the Court finds that SPS did not violate the discharge injunction by sending the Notice of Default.

### 4. Whether the Violation is Sanctionable

Having determined that SPS violated the discharge injunction by sending the mortgage statements, the Court will now consider whether that conduct is sanctionable. Under *Taggart*, the Court may impose sanctions "if there is no fair ground of doubt as to whether the [discharge] order barred the creditor's conduct." 139 S. Ct. at 1799. To meet this standard, the party that violated the discharge injunction must have acted with knowledge of it. *In re Cowan*, No. 18-54666, 2020 WL 7330049, at *6 (Bankr. N.D. Ga. Dec. 11, 2020) (Cavender, J.) (citing *In re Milani*, No. 15-54748, 2020 WL 5551990, at *5 (Bankr. N.D. Ga. Sept. 16, 2020) (Ritchey Craig, J.)). Additionally, there must be "no objectively reasonable basis for concluding that the creditor's conduct might be lawful." 139 S. Ct. at 1799. "In this regard, a subjective good faith belief that the action taken does not violate the discharge injunction is not sufficient to avoid

14

sanctions if such a belief is not objectively reasonable." *Milani*, 2020 WL 5551990, at *5 (citing *In re Jackson*, No. 15-21233, 2020 WL 718609, at *4 (Bankr. D. Conn. Feb. 12, 2020)).

Here, there is insufficient evidence to determine whether SPS knew about Plaintiff's discharge. Plaintiff asserts that in November 2013, she received notice that SPS would be her new servicer and that she "immediately" called SPS and, among other things, told the representative that she had not been told whether her loan was reaffirmed in Chapter 7, and the representative responded by claiming a lack of knowledge about reaffirmation. [Doc. 73 ¶ 24]. SPS disputes that such a call took place in November 2013. [Doc. 100 ¶ 24]. In the Complaint, Plaintiff alleged that a similar phone call took place in February 2014. [Doc. 1 ¶ 10]. SPS stated in its answer that it had insufficient information to admit or deny that allegation and therefore, it denied the allegation. [Doc. 26 ¶ 10]. The Complaint did not expressly mention a November 2013 phone call to SPS, and it is unclear to the Court whether these represent two different phone calls. Furthermore, the RSMF relies upon the corporate records of SPS and a declaration of its representative showing no telephone call with Plaintiff in November 2013. [Doc. 99-1].

Based on the undisputed facts presented, the Court cannot conclude that Plaintiff has established that SPS knew about her discharge, nor can the Court conclude that SPS was ignorant of the discharge. Without that fact, the Court cannot determine whether it was objectively reasonable for SPS to send the mortgage statements in a form that violated the discharge injunction. Accordingly, Plaintiff's motion for summary judgment against SPS will be denied, and as previously noted SPS's motion for summary judgment will also be denied.

## IV. Conclusion

Factual questions remain as to whether SPS had knowledge of Plaintiff's discharge during the time it was servicing her loan, such that the Court is unable to determine whether

15

sanctions are appropriate against SPS for any alleged violations of the discharge injunction. For the foregoing reasons, it is

ORDERED that Plaintiff's Motion for Summary Judgment Against SPS is DENIED; it is further

ORDERED that SPS's Motion for Summary Judgment is DENIED.

**END OF ORDER**

## **Distribution List**

Shirley White-Lett
456 North Saint Marys Lane
Marietta, GA 30064

Grant E. Schnell
Holland & Knight LLP
1180 West Peachtree Street, NW
Suite 1800
Atlanta, GA 30309