

**IT IS ORDERED as set forth below:**

**Date: February 27, 2023**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

IN RE:

SHIRLEY LETT,

    Debtor.

SHIRLEY WHITE-LETT,

      Plaintiff,

v.

BANK OF NEW YORK MELLON
CORPORATION, et al.,

      Defendants.

CASE NO. 10-61451-BEM
CHAPTER 7

ADVERSARY PROCEEDING NO.
20-6031-BEM

**OPINION**

**I. Background**

      This adversary proceeding came before the Court for trial on December 15, 2022

(the "Trial"). Plaintiff Shirley White-Lett appeared pro se and Phillip George appeared on behalf

of Select Portfolio Servicing, Inc. ("SPS") (collectively, the "Parties"). Plaintiff's claims against

all other defendants in this proceeding have been resolved.

Prior to the Trial, the Parties filed cross motions for summary judgment. [Docs. 72,

99]. In deciding those motions, the Court found that mortgage statements sent to Plaintiff by SPS

violated the discharge injunction, but factual issues precluded a determination of whether the

violations were sanctionable. [Doc. 162]. A Pretrial Conference was held on August 23, 2022, at

which the Court stated, and the parties agreed, that the issues to be tried were limited to: the

knowledge of SPS and the reasonableness or unreasonableness of SPS's actions in light of

the discharge. The Court further determined that the trial would be bifurcated to consider first,

knowledge, and then, if necessary, damages.

During the Trial, the Court heard testimony from a representative of SPS and from

Plaintiff and admitted documentary evidence consisting of portions of Plaintiff's exhibits 5 and 9

and portions of SPS's exhibit 5. [Doc. 99-2 at 42-45; Doc. 99-2 at 96-104; Doc. 156 at 384-497;

those portions of Doc. 156 at 3-357 that were discussed with witness Diane Weinberger; and Doc.

190-5, excluding any copies of the note and deed to secure debt]. After careful consideration of

the pleadings, the evidence presented and the applicable authorities, the Court enters its findings

of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court has

jurisdiction in this core matter pursuant to 28 U.S.C. § 157(b)(2)(O).

## II. Post-Trial Motions

On December 20, 2022, Plaintiff filed a document styled as a *Motion for Judgment*

*Pursuant to Rule 52(c) of Federal Rules of Civil Procedure* (the "Rule 52(c) Motion" or "Motion").

[Doc. 219]. SPS filed a response and Plaintiff filed a reply. [Docs. 220, 222]. In addition to seeking

relief under Rule 52(c), the Motion and the reply seek relief against SPS under Rule 37.

2

Rule 52(c), made applicable in this proceeding by Fed. R. Bankr. P. 7052, provides that "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law can, be maintained or defeated only with a favorable finding on that issue." In other words, it allows a judgment as a matter of law before the close of evidence in certain circumstances. "Most commonly, a Rule 52(c) motion is advanced by the defendant at the close of the plaintiff's case (and may be renewed at the close of all evidence). However, the plaintiff may move for judgment at the close of the defendant's case, if, for example, the defendant's evidence is weak and the plaintiff wishes to avoid the need to introduce rebuttal evidence." § 2573.1 Judgment on Partial Findings, 9C Fed. Prac. & Proc. Civ. § 2573.1 (3d ed.). Here, both parties were fully heard on the issue of knowledge and the evidence on that issue closed. A further hearing on damages would only be necessary if the Court concluded that SPS had knowledge of the discharge, which it does not, such that Rule 52(c) does not apply, and any relief requested under Rule 52(c) will be denied. The Court will, however, consider the Rule 52(c) Motion, the response, and the reply as post-trial briefs and will consider the arguments made therein in reaching its decision. The Court will not consider any evidence cited by Plaintiff in the Motion or reply that was not admitted at Trial.

In the Rule 52(c) Motion, Plaintiff revives arguments previously made and rejected by the Court regarding alleged "discovery abuses" by SPS, particularly its failure to produce documents identified in SPS's contact history notes for Plaintiff's loan. [See Docs. 130, 159]. Plaintiff argues that because SPS never produced any of the records mentioned in the contact history notes, Weinberger's trial testimony regarding SPS's knowledge of her discharge must be

3

excluded under Rule 37(c).[1] This Court has found that SPS produced all the documents requested by Plaintiff but gave Plaintiff the opportunity to request additional documents. [Doc. 130 at 3. "SPS has produced everything requested by Plaintiff. However, this does not limit Plaintiff's ability to make additional document requests while discovery is open." Doc. 159 at 14. "At the [December 16, 2021] Hearing, the Court discussed with Plaintiff the production she sought and the requests propounded. None of Plaintiff's requests encompassed the documents referenced in the contact history. The Court reminded Plaintiff of the comments at the October 4th hearing that Plaintiff would have to ask SPS for the documents she sought. Plaintiff admitted she had not requested any specific documents and appeared to believe that having identified the underlying document at the hearing was sufficient."]. Plaintiff has offered no new evidence that she identified any additional documents for production within the time to do so and that SPS failed to produce them.[2] Accordingly, there is no basis to exclude Weinberger's Trial testimony.

**III. Findings of Fact**

In the Consolidated Pretrial Order [Doc. 178], the Parties stipulated to the following facts: On May 17, 2005, Plaintiff executed an adjustable rate note to Aegis Wholesale Corporation in the amount of $636,000 to refinance her home at 456 North Saint Mary's Lane, in Cobb County, Georgia. [Doc. 178, pg. 14]. On January 19, 2010, Plaintiff filed Chapter 7 case no. 10-61451. [Id.] As part of the filing, she listed BAC Home Loans ("BAC") on Schedule D as a "secured creditor" as she then supposed the meaning of the term to be. *Id.* Plaintiff also filed a Statement of Intention seeking to have her mortgage loan reaffirmed. *Id.*

---

[1] Plaintiff specifically identifies a "bankruptcy status check" and "bankruptcy quality control reviews" as the documents she is seeking. [Doc. 219 at 4-5]. But as shown in the Court's Findings of Fact, below, these are not documents but are descriptions of actions taken by SPS employees or attorneys.

[2] Most of the emails Plaintiff attached to her reply were considered when the Court previously determined that SPS had complied with Plaintiff's discovery requests. [See Docs 118, 125-1, 129, 130, 141-1, 145, 151-2, 159].

On October 27, 2010, BAC, on behalf of the Bank of New York Mellon as trustee for the relevant securitized mortgage trust (the "Bank") and as its servicer, filed a motion for relief from the automatic stay in Plaintiff's bankruptcy case. *Id.* The Bank is a bank incorporated under the laws of New York. [Doc. 178, pg. 15]. The Bank is not a Defendant in this proceeding. *Id.* BAC subsequently withdrew the motion for stay relief on January 21, 2011. *Id.* On February 25, 2011, the Bankruptcy Court entered an order granting Plaintiff a discharge. *Id.*

In November 2013, Plaintiff received notice from SPS that SPS would be the new servicer of her mortgage loan and informing her of the opportunity to apply for a loan modification. *Id.* Plaintiff applied for a loan modification. *Id.* SPS sent monthly statements to Plaintiff from December 2013 through September 2016. *Id.* SPS transferred servicing to NewRez LLC d/b/a Shellpoint Mortgage Servicing in December 2016. *Id.*

The Court makes additional findings of fact based on the evidence presented at the Trial as follows: Diane Weinberger ("Weinberger"), a representative and 22-year employee of SPS who currently works in SPS's legal department, testified regarding SPS's practices in general and about SPS's communications with Plaintiff during the time SPS serviced Plaintiff's loan.

Weinberger testified that when SPS becomes the servicer for a loan, the onboarding department performs checks to ensure the system information matches the data sent by the prior servicer and that balances on the loan are reconciled. Every loan is reviewed in the same way. Depending on the status of the loan it may be sent to different departments after onboarding. She testified further that if the loan had been discharged in bankruptcy it would be coded on the loan. Weinberger testified that SPS has a department for loans that are in bankruptcy, although she has never worked in that department. Weinberger stated further that the entire loan file is electronic.

5

Weinberger testified that SPS was unaware of Plaintiff's bankruptcy. She further testified that Plaintiff's loan was not in bankruptcy status at the time it was onboarded to SPS's system, and therefore neither the bankruptcy department nor a bankruptcy specialist oversaw Plaintiff's loan. Weinberger testified that Plaintiff's loan was never in SPS's bankruptcy department. Weinberger testified that all loans serviced by SPS that are in bankruptcy or have been discharged in bankruptcy have an indicator on the borrower's electronic loan file, which shows almost every detail on one page. Weinberger testified that she reviewed Plaintiff's electronic loan file, that it did not include the bankruptcy or discharge indicator, and that she did not look further than that; that is, she did not look for something that was not there. Weinberger stated further that she did not review Plaintiff's entire loan servicing file going back to 2005 and she does not think it is SPS's general practice to search for a discharge on each loan.

SPS sent various letters to Plaintiff and spoke with Plaintiff on the telephone on many occasions. [Doc. 190-5, SPS Ex. 5 (a compilation of Plaintiff's written disputes to SPS from 2013 to 2016); Doc. 156 at 384, Pl. Ex. 9 (SPS's Contact History for Plaintiff's loan, hereinafter the "Contact History")]. Telephone calls are memorialized in the Contact History for Plaintiff's loan. Weinberger testified that the Contact History is used to record conversations with the borrower, to show work done on the loan, to show letters sent, and to show contacts with other people. During each of Plaintiff's aforementioned communications with SPS, Weinberger testified that Plaintiff did not mention her bankruptcy case or that she had received a Chapter 7 bankruptcy discharge in 2011.

The earliest entry on the Contact History is dated November 21, 2013, and includes the names of individuals designated as "BK Contact" and "FC Contact" along with email addresses and phone numbers for these individuals. [Doc. 156 at 495-96]. Weinberger testified that the

6

information is a directory of individuals from a prior servicer or counsel who can answer questions. Weinberger testified that SPS often assigns various contacts when it onboards a loan, including a bankruptcy contact, but that does not necessarily mean the loan is currently in bankruptcy or in a bankruptcy status or that it has been discharged in bankruptcy. Weinberger testified that Plaintiff's loan was never in SPS's bankruptcy department, and any SPS bankruptcy department contact information in SPS's Contact History with Plaintiff was in the nature of a directory of individuals f for the servicers in case a question arises and not because Plaintiff's loan was in the bankruptcy department.

Plaintiff examined Weinberger with respect to the five entries in the Contact History that contained the notation, "BK QC Review Complete,"[3] Weinberger testified that the purpose of each review was to determine if a letter sent to Plaintiff by SPS should include a bankruptcy disclosure, which is done by checking for the bankruptcy indicator on the loan file; because there was no bankruptcy indicator on Plaintiff's loan, the disclosure was not included. Weinberger testified that the review takes place on every letter going to a borrower. With regard to the entry in the Contact History stating, "[T]he Bankruptcy status checked for Shirley Lett was completed and uploaded on 1/12/16,"[4] Weinberger testified this was a communication from SPS's foreclosure counsel letting SPS know that they had checked the bankruptcy database for Plaintiff's bankruptcy status before proceeding with foreclosure, and that because Plaintiff was not in bankruptcy at that time it did not affect foreclosure. Weinberger testified that she believes the attorney pulls PACER[5] to determine if the borrower is in bankruptcy.

---

[3] [Doc. 156 at 393, 402, 420].
[4] [Doc. 156 at 466].
[5] "PACER" stands for Public Access to Court Electronic Records, which is a service that provides electronic public access to federal court records.

Weinberger stated that all SPS employees receive annual compliance training on generally applicable state and federal laws and regulations, but such training does not include training on the Bankruptcy Code and the bankruptcy discharge. Notwithstanding that she had not worked in the bankruptcy department Weinberger testified that if a loan is in bankruptcy or if a discharge is entered, that changes the way the loan is serviced and is an important fact. Weinberger testified that individuals in the bankruptcy department may receive more detailed training on bankruptcy laws.

On April 19, 2014, Plaintiff sent a letter to SPS with the subject line "R.E.S.P.A. Qualified Written Request," in which she requested an itemized statement of fees related to her loan. [Doc. 99-2 at 44]. SPS sent Plaintiff a letter dated April 23, 2014 in response that stated, "Regarding the fees, the expenses paid by the servicer are shown on your monthly statements. These *may* include bankruptcy or foreclosure attorneys' fees and costs, property inspections, or the cost to have the value of the property assessed." [Doc. 99-2 at 97 (emphasis added)]. Weinberger testified that after SPS received Plaintiff's letter, SPS conducted an investigation and responded, but Weinberger could not agree based on SPS's letter that bankruptcy fees were added to Plaintiff's account.

Plaintiff testified that upon receiving notice that SPS was her new servicer, she immediately called SPS. She testified that in a telephone conversation with Darrell McBride ("McBride"), she told SPS about litigation with Bank of America, payment disputes, her bankruptcy, and her request to Bank of America for reaffirmation. She testified that McBride told her she would have to address the payment disputes and reaffirmation questions to Bank of America. The Contact History for Plaintiff's account with SPS shows a communication between Plaintiff and McBride on December 7, 2013. [Doc. 156 at 493]. The notes for that contact do not

8

contain any mention of bankruptcy, discharge, or reaffirmation. [Id.]. The December 7, 2013, entry

by McBride contains four ellipses. Weinberger testified that she did not know what the ellipses

meant but that employees are trained to put all notes in the file; the notes are supposed to reflect

the essence of the phone call with nothing left out, including any information detrimental to SPS.

Weinberger testified she had no reason to believe McBride omitted any information from the notes.

The Contact History contains an entry on December 16, 2013, by Sherise Pugh, reflecting a

telephone conversation with Plaintiff, which also contains multiple ellipses. [Doc. 156 at 491]. Ms.

Pugh's notes also show that Plaintiff advised her of Plaintiff's dispute with Bank of America and

the litigation pending but did not make any reference to bankruptcy or reaffirmation.

        The Contact History shows that the first telephone call between Plaintiff and SPS

took place on December 2, 2013, the notes of which show Plaintiff advised SPS the "loan is under

a lawsuite [sic] with BOA" and that there was no record of this so SPS's customer service

representative provided Plaintiff with an email address to use in sending the litigation documents

to SPS. [Doc. 156 at 495]. The notes from two December 3, 2013, telephone calls show that

Plaintiff again mentioned the lawsuit with Bank of America, as do the December 7, 2013, notes

by McBride and the notes from a December 11, 2013, call. [Id. at 492-94]. None of these entries

indicate that Plaintiff informed SPS of her bankruptcy or her discharge or request for reaffirmation.

Weinberger testified that she did not know if recordings of calls with Plaintiff existed and did not

review any recordings of conversations between Plaintiff and McBride or any other customer

service representative at SPS.

        Plaintiff testified on cross-examination that she never told SPS in writing that she

had a bankruptcy discharge, and that she told McBride she had filed a reaffirmation with her

bankruptcy and wanted to know if the debt had been reaffirmed.

9

**IV. Conclusions of Law**

A Chapter 7 discharge "discharges the debtor from all debts that arose before the date of the order for relief[.]" 11 U.S.C. § 727(b). Under 11 U.S.C. § 524(a)(2), a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor." The scope of the injunction is broad and bankruptcy courts may enforce the discharge injunction through section 105 of the Bankruptcy Code. *In re McLean*, 794 F.3d 1313, 1319 (11th Cir. 2015). However, a Chapter 7 discharge does not avoid or otherwise affect a lien against property of the debtor. *Sellers v. Rushmore Loan Mgmt Servs., LLC*, 941 F.3d 1031, 1035 (11th Cir. 2019).

When a party is found to have violated the debtor's bankruptcy discharge, bankruptcy courts may award civil contempt sanctions under § 105(a) to "compensate the complainant for losses and expenses incurred because of the contemptuous act" or to "coerce the contemnor into complying with the court order." *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1557 (11th Cir. 1996); *see United States v. Mine Workers of Am.*, 330 U.S. 258, 303-04, 67 S. Ct. 677, 701 (1947) (remedies for civil contempt may be coercive, compensatory, or both). The Supreme Court has held that a creditor who violates the discharge injunction may be held in civil contempt "if there is no fair ground of doubt as to whether the [discharge] order barred the creditor's conduct." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799, 1801 (2019). In other words, civil contempt may be appropriate if there is "no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id.* at 1799. *See In re Ragone*, No. 20-8013, 2021 WL 1923658, at *7 (B.A.P. 6th Cir. May 13, 2021) (concurring opinion noting that *Taggart* incorporated the "usual injunction practice into discharge litigation" and referencing Rule 65(d)). "In this regard, a

10

subjective good faith belief that the action taken does not violate the discharge injunction is not

sufficient to avoid sanctions if such a belief is not objectively reasonable." *In re Milani*, No. 15-

54748, 2020 WL 5551990, at \*5 (Bankr. N.D. Ga. Sept. 16, 2020) (Ritchey Craig, J.) (citing *In re*

*Jackson*, No. 15-21233, 2020 WL 718609, at \*4 (Bankr. D. Conn. Feb. 12, 2020)).

To establish civil contempt in federal court, the plaintiff must demonstrate by clear

and convincing evidence that "1) the allegedly violated order was valid and lawful; 2) the order

was clear, definite and unambiguous; and 3) the alleged violator had the ability to comply with the

order." *Jordon v. Wilson*, 851 F.2d 1290, 1292 n.2 (11th Cir. 1988) (citing *United States v. Koblitz*,

803 F.2d 1523, 1527 (11th Cir. 1986)). The plaintiff must prove its case by clear and convincing

evidence which is not an "impossible" evidentiary standard, rather it requires evidence of "such

weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy,

as to the truth of the allegations sought to be established." *Gallardo by & through Vassallo v.*

*Dudek*, 963 F.3d 1167, 1182 (11th Cir. 2020), *aff'd sub nom. Gallardo By & Through Vassallo v.*

*Marstiller*, 142 S. Ct. 1751 (2022).

Knowledge of the court order that is being enforced is implicit in most cases that

address injunctions and indeed is implicit in the Supreme Court's analysis in *Taggart*. *See Taggart*,

139 S. Ct. at 1802 (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S. Ct. 713, 715 (1974)

("[P]rinciples of 'basic fairness require[es] that those enjoined *receive explicit notice*' of 'what

conduct is outlawed' before being held in civil contempt[.]") (emphasis added); Fed. R. Civ. P.

65(d)(2) (an injunction only binds those "who receive actual notice of it"); *see also In re Cowan*,

No. 18-54666, 2020 WL 7330049, at \*6 (Bankr. N.D. Ga. Dec. 11, 2020) (Cavender, J.) (citing

*Milani*, 2020 WL 5551990, at \*5).

11

Knowledge is not implicit here. Rather, the Court previously found SPS violated Plaintiff's discharge injunction by sending 33 mortgage statements that did not include disclaimers, acknowledgement of the discharge, or any indication that payment was voluntary but, whether SPS had knowledge of the discharge injunction remained to be determined. Plaintiff argues that SPS failed to prove it had no knowledge of the discharge. In the usual case, as previously noted, knowledge is implicit but here that is not the case and to establish knowledge of the discharge injunction is part of Plaintiff's prima facie case. Fidelity Mortg. Inv. v. Camelia Builders, Inc., 550 F.2d 47, 52 (2nd Cir. 1976) ("a person is in contempt of court if he knowingly violates a court order, whether or not he received a formal notice.") Thus, Plaintiff must establish that SPS had knowledge before a finding of contempt can be made. If the order was not entered in a proceeding in which Defendant was a party or otherwise had knowledge of the order, a finding of contempt could not be made because it would run afoul of the principles of fairness recognized in *Taggart*. The burden to prove why the alleged contemnor was unable to comply with the order at issue only shifts to the alleged contemnor once the plaintiff has fully satisfied her burden of proving civil contempt. *See Peery v. City of Miami*, 977 F.3d 1061, 1076–77 (11th Cir. 2020) ("Only if the moving party makes its prima facie showing does the burden "shift to the alleged contemnor to produce evidence explaining [its] noncompliance at a show cause hearing."); *Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*, 349 F. Supp. 2d 509, 515-16 (E.D.N.Y. 2004) ("An alleged contemnor can overcome a finding of civil contempt by proving that…it lacked knowledge of the terms of the order").

In addition to disagreeing about who bears the burden of proof, the parties also disagree about what level of knowledge is required to support a finding of civil contempt. Plaintiff argues that actual or constructive knowledge is sufficient while SPS argues that actual knowledge

is required. In *Taggart*, the Supreme Court looked to the historical doctrine of civil contempt in considering the violation of the discharge injunction. Thus, the Court concludes that the knowledge requirement is that generally required by the federal courts to find civil contempt for violation of an injunction.

The Eleventh Circuit has not specifically addressed this issue since *Taggart* but has, as have other Circuits, noted that actual knowledge is required for an injunction to bind parties and related entities or individuals. *Cypress Barn, Inc. v. W. Elec. Co.*, 812 F.2d 1363, 1364 (11th Cir. 1987) (citing Fed. R. Civ. P. 65(d)); *see also*, *ZiLOG, Inc. v. Corning*, (*In re ZiLOG)*, 450 F.3d 996, n. 12 (9th Cir. 2006) (discussing its view that a contempt order entered for violation of the automatic stay or the discharge injunction is governed by the same standards, that is, civil contempt which requires actual knowledge and citing Fed. R. Civ. P. 65(d)); *In re Ragone*, No. 20-8013, 2021 WL 1923658, at *7 (B.A.P. 6th Cir. May 13, 2021). As a result, it is possible that actual knowledge of the discharge order is necessary to support a finding of contempt.

On the other hand, three Circuit Courts have held that civil contempt requires actual or constructive knowledge rather than actual knowledge. *See De Simone v. VSL Pharms., Inc*., 36 F.4th 518, 529 (4th Cir. 2022) (civil contempt requires actual or constructive knowledge of a valid decree and "at least constructive knowledge" of violations of the decree); *Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 590-91 (7th Cir. 2008) *abrogated on other grounds by Minn-Chem, In c. v. Agrium*, 683 F.3d 845 (7th Cir. 2012) (same); *Energy Recovery, Inc. v. Gauge*, 745 F.3d 1353, 1357 (Fed. Cir. 2014) (same).  The Court need not determine whether constructive knowledge or actual knowledge is the appropriate standard however, because Plaintiff failed to establish either. As a result, Plaintiff failed to meet her burden of proving the elements of civil contempt and the burden of proof did not shift to SPS to prove lack of knowledge.

Plaintiff asserts that her loan was transferred from Bank of America or Green Tree Servicing, LLC's[6] bankruptcy department to SPS's bankruptcy department based on notations in the Contact History. However, the evidence presented does not support that conclusion. The Contact History does not contain notations that show that the loan was in the bankruptcy department. The Contact History includes columns for "Date," "Type," "Department," "Who," and "Notes." At various times, the column for "Department" listed: INET, Information Systems, Loss Mitigation, Loss Resolution, Customer Service, Customer Advocate, Corporate Legal, Ombudsman, Payoffs Quotes, REO Department, Foreclosure Department, Primary Collections, Loan Resolution, Special Loans/ARMS, Residential Real Est Rvw, Customer Assurance Res De, Property Preservation, New Loan Setup, and Consumer Assurance Review. The Contact History contains a single entry on August 29, 2016, in which "Bankruptcy Department" is listed as the department. [Doc. 156 at 409]. It was the third of five entries made during the noon hour on August 29, 2016. The first entry was made at 12:08 p.m. by the Customer Service department, saying "LOG BCT – Completed[;] Discuss Pending Plan – Not Discussed[;] Discuss Next Plan Payment – Not Discussed." [Id. at 410]. The second entry was made at 12:12 p.m. by the Customer Service department describing a phone call by Plaintiff regarding a dispute, and says "transferred to ombudsman dept." [Id. at 410]. Then came the Bankruptcy Department entry, made by Zinnia Bozo at 12:25 p.m., which said "LOG BCT – Completed[;] Discuss Pending Plan – Customer Refused[;] Discuss Next Plan Payment – Customer Refused." [Id. at 409]. At 12:27 p.m., Bozo made another entry under the Ombudsman department with notes from a phone call with Plaintiff regarding her dispute. [Id.] At 12:28 p.m., Bozo made an entry under the Ombudsman department indicating a complaint had been taken over the phone and was "sent to be open." [Id. at 408].

---

[6] The first entry in the Contact History containing directory type information included a reference to Green Tree Servicing, LLC as a prior servicer. [Doc. 156 at 496].

Weinberger testified that the department reference was as to information, not where Plaintiff's loan was being handled. Thus, the sole reference to the bankruptcy department in the Contact History does not create an inference that the loan was in SPS's bankruptcy department rather it creates a question that is unanswered—whether the reference to the bankruptcy department was a mistake, whether it was informational, whether the calls were referring to a trial modification or other payment plan among others.

In addition, Weinberger testified on more than one occasion that the loan was not in the bankruptcy department and was not being handled by a bankruptcy specialist. The notation that Plaintiff relies on to assert that her loan was in SPS's bankruptcy department is the initial entry in the Contact History and includes the names of individuals designated as BK Contact and FC Contact at SPS, as well as other contact information at Bank of America for Collateral Document Return, Foreclosure, Bankruptcy and Eviction Invoices, REO Invoices, and Deed in Lieu Invoices. Weinberger explained that this list of contacts was added as part of the onboarding process in the event of questions for the prior servicer or counsel. Weinberger also stated that there was no bankruptcy indicator on Plaintiff's electronic file and that the loan was never in SPS's bankruptcy department. Further, the evidence showed that SPS was not the servicer of Plaintiff's loan until more than two years after entry of the discharge and that the prior servicer did not include a bankruptcy or discharge flag on the loan file.

Although Plaintiff testified that she gave oral notice of her discharge to SPS and asked about whether her loan had been reaffirmed, the contemporaneous notes of Plaintiff's conversations with McBride, the individual she testified that she told about her discharge, do not contain any reference to bankruptcy, discharge, or reaffirmation. Nor does the Contact History reference, at any point, bankruptcy or reaffirmation, and Plaintiff's correspondence with SPS does

15

not contain any mention of Plaintiff's bankruptcy or bankruptcy discharge by Plaintiff or SPS[7].

Additionally, Plaintiff's testimony on this point was inconsistent. On direct examination, she stated

that she told McBride she had filed bankruptcy; she did not testify that she advised him of when

she filed bankruptcy or that she had received a discharge. On cross examination, her testimony

about her conversation with McBride evolved. Initially she said: "I spoke with Mr. McBride. I told

him about my - that I was trying to get the debt reaffirmed, which automatically says it's in

bankruptcy." [Doc. 221 at 169, li. 3-5]. She then testified, "I told Mr. McBride in December 2013,

when I spoke with him … that I had – I filed a reaffirmation with my bankruptcy." [Id. li. 12, 16-

17]. She then said, "I told him that I had filed for bankruptcy and I filed for reaffirmation." [Id. at

170, li. 3-4]. Due to the internal inconsistencies in Plaintiff's testimony, its inconsistency with the

other evidence, the Court's observation of Plaintiff's demeanor, and the Court's prior experience

with Plaintiff's mischaracterization of facts in this proceeding, the Court does not find Plaintiff's

testimony credible.

Weinberger testified that contact history notes are intended to be the full history of

the loan including conversations and correspondence with borrowers or others related to a loan.

She testified that customer service representatives are highly trained and are taught to record

everything said including things that are not favorable to SPS. Customer service representatives

have their calls monitored and checked for quality control. Notwithstanding this training,

McBride's notes contain ellipses that Weinberger could not explain. Plaintiff argues that the

ellipses mean that parts of the conversation were not included in the notes. While an ellipsis may

be used to indicate language omitted from a quotation, it does not follow that it serves the same

---

[7] Plaintiff argues that the reference to her loan potentially including bankruptcy fees establishes that SPS knew of her bankruptcy. The Court disagrees as the letter states only that the loan may contain such fees. Whether the letter is properly construed as meaning it does include such fees or it may (as it states) include such fees points to Plaintiff's failure to satisfy her evidentiary burden in this proceeding.

purpose in notes from a telephone call, and further, would be entirely inconsistent with the evidence presented as to the training of SPS customer service representatives which emphasizes the need to fully and completely notate conversations with customers. The evidence does not explain the ellipses and at best creates a question that the evidence does not answer—that is, what was the purpose behind the ellipses. The Court viewed Weinberger's demeanor at Trial and found her to be a credible witness. In addition, her testimony is corroborated by the documentary evidence admitted at the Trial.

Considering the totality of the evidence regarding Plaintiff's assertion that she told McBride about reaffirming her loan or her bankruptcy, the Court does not find Plaintiff's argument persuasive because the Contact History notes cover (1) other areas that Plaintiff acknowledges were discussed with McBride, including her payment dispute and litigation with Bank of America, her efforts to obtain a loan modification from Bank of America, and her unwillingness to go through the loan modification process again with SPS, and (2) other conversations with other customer service representatives that memorialize Plaintiff's payment dispute with Bank of America, and Plaintiff's claim that SPS was harassing her by sending appraisers to her home. But the Contact History notes do not contain any reference to reaffirmation or bankruptcy in any of the numerous calls Plaintiff had with SPS's personnel. Further, and importantly, the Court did not find Plaintiff to be a credible witness. Rather, the Court believes that Plaintiff is convinced of the things she argues because Plaintiff has spent years with these disputes and does not take into account contrary information provided by individuals who have greater knowledge. But Plaintiff's beliefs about the facts are not supported by the evidence.[8] As a result, the Court concludes that Plaintiff

---

[8] Even in her post-Trial briefing, Plaintiff continues to assert that SPS's bankruptcy department was overseeing her loan [Docs. 219 at 12, 222 at 6], and continues to mischaracterize Weinberger's deposition testimony and her Trial testimony. [Docs. 219 at 12, 22. at 7-8].

failed to establish by clear and convincing evidence that SPS had actual or constructive knowledge

of her chapter 7 bankruptcy and/or her discharge and sanctions are not appropriate because of this

lack of knowledge. Thus, SPS is entitled to entry of Judgment in its favor. The Court will enter a

separate judgment in SPS's favor.

**END OF ORDER**

**<u>Distribution List</u>**

Shirley White-Lett
456 North Saint Marys Lane
Marietta, GA 30064

Phillip George
Holland & Knight LLP
1180 West Peachtree Street, NW
Suite 1800
Atlanta, GA 30309